[No. C001098. Third Dist. May 8, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT HERSCHELL HAMMON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion except parts I and III.

1086

## Counsel

Handy Horiye, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

SPARKS, J.—Once again we grapple with the constraints on punishment for serial sex acts. In *People* v. *Reeder* (1984) 152 Cal.App.3d 900 [200 Cal.Rptr. 479], we examined the requirement for mandatory full-term consecutive sentences for violent sex offenses under Penal Code section 667.7, subdivision (d) when they "involve the same victim on separate occasions." We held that the "Legislature's use of the phrase 'separate occasions' . . . imposes a requirement of detachment of one episode from another before the mandatory requirements of subdivision (d) become applicable. By detachment we mean an interruption in the criminal activity of sufficient

duration or nature that the end of one sexual episode and the start of another can be ascertained with reasonable certainty." (152 Cal.App.3d at p. 915, fn. omitted.) We return to that theme of divisibility in this case. This time we wrestle with the problem of multiplicity of offenses. As Witkin notes and we can attest, "[e]xtreme difficulty has been encountered by the courts in resolving problems of 'merger,' 'concurrence,' and 'multiplicity'; i.e., in determining when acts or transactions give rise to a *single offense,* and when they amount to *several offenses.*" (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 69, p. 72, italics in original.) At issue here are the identity of separate crimes for repeated instances of the same sexual act and the application of the proscription against multiple punishment under Penal Code section 654 to those criminal acts. The question is when and under what circumstances identical sexual acts may be divided into several crimes. As we shall explain, identical sexual conduct is divisible into discrete crimes, and is separately punishable for purposes of Penal Code section 654, whenever the perpetrator completes one sexual offense before beginning another. A sexual offense is completed whenever it is followed by the commission of a different sex offense, when the perpetrator reaches a sexual climax, or when there is an appreciable interval of time between the identical acts, or if not appreciable, at least a sufficient lapse of time that the offender had a reasonable opportunity to reflect upon his actions before resuming the same sexual conduct.

Defendant Robert Hammon waived his right to trial by jury and was convicted by the court of 11 counts of lewd conduct with a child under 14 years old (Pen. Code, § 288, subd. (a) [all further undesignated section references are to this code]), with allegations of substantial sexual conduct with a victim under the age of 11 years (§ 1203.066, subd. (a)(8)) sustained as to counts 4, 5, 7, 8, 9, and 11.[1] After a court-ordered temporary placement in a diagnostic facility (§ 1203.03), the court sentenced the defendant to state prison for the upper term of eight years on count 3, with consecutive sentences of one-third of the middle term of six years (§ 1170.1, subd. (a)) imposed on each of the remaining ten counts for a total of twenty eight years. On appeal defendant raises an ill-framed argument that the photographs by which he was convicted were constitutionally required to be further corroborated, claims the proscription against double punishment in section 654 has been violated, and asserts the trial court did not give sufficient reasons for imposing consecutive sentences. Only a variation of the double punishment

---

[1]Section 1203.066, provides in relevant part: "(a) Notwithstanding Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons: . . . [¶] (8) A person who in violating Section 288 has substantial sexual conduct with a victim under the age of 11 years. . . . [¶] (b) "Substantial sexual conduct' means penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

argument has merit and is the one we consider in the published portion of this opinion. As we shall explain, defendant was convicted of 11 sexual offenses when only 7 had been committed. Thus the conviction as well as the punishment for the four duplicate crimes must fall. But defendant was properly convicted and punished for the remaining seven offenses and we shall affirm the judgment as to those crimes.

FACTS

On May 14, 1984, Sergeant Robert Humphrey of the Sexual Abuse Bureau of the Sacramento County Sheriff's office went to the defendant's apartment for the purpose of executing a search warrant.[2] Among the materials seized were three rolls of negative strips of film. The negatives depicted an adult male and a female infant, both naked. When questioned about the negatives, defendant admitted to being the adult in the picture and said the infant was the daughter of a friend. He also stated the photographs had been taken seven or eight years previously and he had no idea where or how the officer might contact the infant or her mother. The officer also found during the search a 35-millimeter camera, two cable releases (which permit the shutter of a camera to be tripped from some distance away), and an automatic winder (which, when attached to a camera, permits photographs to be taken in rapid sequence without advancing the film by hand). Because the officer did not have any evidence that the acts depicted in the negatives occurred within his jurisdiction or that the statute of limitations was still running, he did not arrest the defendant at this time. The defendant was eventually arrested in November 1984, again admitting to being the adult in the negatives and once again claiming the events took place years earlier. As the result of a newspaper article about defendant's arrest, Leonora L., one of defendant's former lovers and the mother of a female toddler, went to the police station because the article mentioned the existence of the negatives with an unidentified female infant. To her horror, she recognized the infant in the pictures as her daughter.

At trial, Sergeant Humphrey testified the 111 photographs introduced into evidence were in fact accurate depictions of the 3 seized rolls of negatives and had been in the continuous chain of custody of the police and the district attorney's office. Defendant did not challenge their introduction into evidence. Leonora undertook the gruesome task of examining the entire stack of photographs in order to testify she either recognized her daughter or did not see anything about the infant in any photograph which would be inconsistent with her daughter. She also testified that her daughter was born in July 1981; that defendant babysat for her daughter and an older sibling

---

[2] As there is no challenge to the legality of the search, the circumstances leading up to it will not be recounted.

five to ten times at his apartment when she was having troubles with her older children, with the longest time span involved lasting approximately two and one-half days; and that defendant no longer babysat for her after she moved in July 1982.[3] She was unable to recognize any background details in the photographs because she had never been to defendant's apartment and was, in fact, unaware of where he actually lived at that time.

Mary C. was another of defendant's former lovers. She testified she knew him from 1979-1983, had been to apartments he lived in behind the Sunrise Mall and near the mall on Bonham Circle, and believed the photographs were dissimilar in terms of wall texture (particularly People's exhibit 1) from either of these residences. After the fall of 1981, she did not know where defendant lived. She did recognize the furnishings and the sheets visible in the photographs as belonging to defendant. Another witness, Marie B., testified defendant had moved into an apartment over the garage of the house where she was living on Empress Street in the North Sacramento area; she was able to fix the time as approximately two months before she bought a car in March 1982. She recognized the headboard in the photographs as being defendant's because she cleaned up the apartment for him after he moved in the summer of 1982 to a trailer with panelled walls. She also testified she recalled defendant several times bringing her an infant, mentioning it was the child of a woman under "a lot of stress," and asking her as a favor to watch the infant while he was at work. She remembered the name of the infant as being the same as the victim's. She further testified that defendant kept the infant in his own apartment overnight on one occasion. Defendant did not testify in his own behalf. Further facts will be developed in the course of the discussion as becomes necessary.

DISCUSSION

·I*

. . . . . . . . . . . . . . . . . . .

II

We turn now to defendant's contention that he received double punishment for his crimes in violation of section 654. He claims, in essence, that he committed only four discrete offenses against the infant victim, with

---

[3]Leonora twice testified defendant never babysat the infant alone because he always took both the infant and an older daughter; she further testified the older daughter made no mention of anything unusual occurring. While this conflicts with Marie's testimony the infant was there alone, it was within the power of the trial court to credit Marie and attribute Leonora's testimony to forgetfulness.

*See footnote, *ante,* page 1084.

different photographs of the same offenses impermissibly forming the basis for the additional seven convictions.

As we have recounted, defendant was charged with 11 counts of lewd conduct with a child under the age of 14 years in violation of section 288, subdivision (a).[5] That section provides that "[a]ny person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years." ■ Under its terms, an accused can violate this section either by committing some other Penal Code offense, such as rape (§ 261), unlawful sexual intercourse (§ 261.5), sodomy (§ 286), or oral copulation (§ 288a), or by committing some other undefined lewd act upon the child. (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 863-864 [212 Cal.Rptr. 174].) Although the lewd act may consist of some other sexual offense, it must be accompanied in all cases "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of [the perpetrator] or [the] child." (§ 288, subd. (a).) Consequently, "[t]his provision can be violated only when a lewd act is committed with the required specific intent." (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].)[6] The 11 counts were grouped by the information into 4 classes, 3 of which involved other crimes: (1) lewd acts (counts 1-2; "straddles" and "touches" the penis); (2) oral copulation of the penis (counts 3-6; § 288a); (3) oral copulation of the vagina (counts 7-9; § 288a); and (4) unlawful sexual intercourse (counts 10-11; § 261.5). Defendant was convicted and sentenced for all 11 counts.[7] ■ He contends that his sentence on all the counts instead of just four of them violated the proscription against multiple punishment. ■■■■ He

---

[5] For purposes of clarity in this appeal in which all the offenses are charged as violations of section 288, we shall refer to the type of sexual offense or conduct underlying each charge.

[6] It is for this reason that the *Pearson* court held a defendant could be lawfully convicted of (but not punished for) both the general intent crime of sodomy and the crime of lewd conduct with a child for the commission of a single act of sodomy.

[7] Although the trial court convicted defendant of all 11 counts, it did not find the lewd acts in counts 3, 6 and 10 to be the ones the prosecutor had alleged. Count 3 alleged that the lewd act consisted of defendant placing "his penis into the mouth" of the infant. The trial court, however, found the allegation that defendant had substantial sexual conduct with the infant within the meaning of section 1203.066, subdivision (a)(8) in the commission of this count to be untrue. Since substantial sexual conduct includes oral copulation by definition, the court necessarily found that the lewd act underlying count 3 was not oral copulation. The same is true of count 6, which alleged that defendant put "his penis on the mouth" of the infant. The lower court also found that no substantial sexual conduct occurred in the commission of count 10, which alleged that defendant placed "his penis in the vagina" of the infant. This negative finding also necessarily meant that the lewd act undergriding count 10 was not unlawful sexual intercourse. Thus the lewd conduct for these three counts consisted of some undefined lewd acts and not some other sexual offenses.

argues that where the same type of sex crime is committed within a short time and without the commission of a different type of sex crime between acts and without other significant activity, the commission of multiple acts of the same crime constitutes a continuous conduct and can only be punished once.[8]

█ Defendant confuses crimes with transactions. The facts of this case implicate more than just an analysis of impermissible multiple punishment for separate crimes; they tender issues about the improper splitting of a single offense into multiple crimes as well. Thus, we are also concerned with whether some of defendant's repeated acts constituted one violation or several. This concern was recognized by defendant's trial counsel (who moved both for dismissal of some counts as duplicative and for acquittal on those counts at the close of the prosecutor's case, neither time successfully) even though the prosecution, the trial court and appellate counsel have all viewed the problem as solely one arising under section 654. This may be because "the cases fail to adequately distinguish between the concept of a single act or omission in the context of multiple prosecution and conviction as opposed to multiple punishment . . . ." (*People* v. *Gardner* (1979) 90 Cal.App.3d 42, 47 [153 Cal.Rptr. 160].) Nevertheless, a distinction exists. "We have instances [in this appeal] of a single crime having been fragmented or proliferated into more than one offense, which may not be done. The general jurisprudential considerations are the same as those disfavoring imposition of multiple punishments upon crimes arising out of a single transaction (Pen. Code, § 654), but there is a technical difference between them. The issue here is 'identity of offense as distinguished from the identity of transactions from which they arise.' " (*People* v. *Schroeder* (1968) 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491], citations omitted; accord, *People* v. *Harris* (1977) 71 Cal.App.3d 959, 969 [139 Cal.Rptr. 778].)[9] In short, the

---

[8] It has been noted that there is a conceptual distinction between continuous conduct resulting in one crime and multiple repetitions of the same crime. "There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like . . . ." (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897], citations omitted.) Unlike the problem posed here, the continuous conduct exception is not necessarily based upon the fact that uninterrupted acts occurred in the same time frame. That exception is premised instead upon the repetitive and cumulative nature of the crime. Thus the fact that there is a significant time interval between the acts, often as much as days apart, is not critical to this exception.

[9] The cases do not identify the jurisprudential basis for this premise with any degree of precision, tending instead to state it as a given. (See, e.g., *People* v. *Stephens* (1889) 79 Cal. 428, 432 [21 P.856] ["The law does not permit a single individual act to be divided, so as to make out of it two distinct indictable offenses."].) Some describe the problem as one of insufficiency of the evidence to prove more than a single violation. (See, e.g., *People* v. *Smith* (1945) 26

issue in determining the identity of separate offenses is the divisibility of criminal acts while in double punishment it is the divisibility of the transaction. Since section 654 only bars multiple punishment and not multiple convictions (*People* v. *Pearson, supra,* 42 Cal.3d at p. 359), if double conviction is prohibited, the issue of multiple punishment becomes moot. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 375, 461 P.2d 637, 37 A.L.R. 3d 1398].) The critical significance of the distinction is that when remedying impermissible multiple convictions, it is not sufficient merely to stay the punishment; rather, the conviction itself must be reversed. (*People* v. *Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556]; *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 462 [143 Cal.Rptr. 587, 3 A.L.R. 4th 1185].) Nonetheless, because the "jurisprudential considerations of double conviction and double punishment are similar" (*People* v. *Harris, supra,* 71 Cal.App.3d at p. 969), we shall resort to the divisibility concepts developed for sexual offenses in the context of section 654, before making the necessary distinction in our resolution of this case.

Section 654 provides, in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." While the language of the statute itself speaks of a single "act," it has been interpreted as also applying to a series of acts constituting an indivisible transaction. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 638 [105 Cal.Rptr. 681, 504 P.2d 905]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Brown* (1958) 49 Cal.2d 577, 591 [324 P.2d 5].) Thus, "it is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].)

The test for determining whether a transaction is divisible is "to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in the pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Beamon, supra,* 8 Cal.3d at p. 639.) But "[i]f all of the offenses were incident to one objective,

---

Cal.2d 854, 859 [161 P.2d 941] [receipt on a single occasion of goods stolen from several persons only one violation of receiving stolen property].) Others hold that the definitions set out in the singular in the Penal Code also embrace the plural, so the multiple criminal acts on one occasion constitute but one offense. (See, e.g., *People* v. *Bowie* (1977) 72 Cal.App.3d 143, 156-157 [140 Cal.Rptr. 49] [possession of 11 blank checks with intent to defraud only 1 crime even though the statute refers to "any check"].)

the defendant may be punished for any one of such offenses but not for more than one." (*Neal, supra,* 55 Cal.2d at p. 19.)

This test based upon the intent and objective of the defendant, the high court has conceded, "has generated a number of refinements in the area where the test is applicable. . . . The net effect of our holding in [the *Neal*] case was that where multiple acts of violence occur against multiple victims, the course of conduct is divisible. On the other hand, where a course of conduct involves only crimes against property interests of multiple victims, common sense requires, in the absence of other circumstances, a determination of the indivisibility of the course of conduct and the applicability of section 654." (*Beamon, supra,* 8 Cal.3d at p. 638, fn. 10, citations omitted.)[10]

Of concern in this appeal is the specific wrinkle the Supreme Court added to the cloth of section 654 jurisprudence applicable solely to sexual offenses. In *People* v. *Perez, supra,* 23 Cal.3d 545, the court declared an intent to obtain sexual gratification to be too "broad and amorphous" for purposes of section 654. Consequently, different sexual offenses committed in the same transaction may be separately punished. (23 Cal.3d at pp. 552-553.) There during a period of 45 minutes to an hour, defendant orally copulated the victim, committed sodomy on her, forced her to orally copulate him, had vaginal intercourse with her, forced her to orally copulate him again, and then had vaginal intercourse with her again. Convicted of forcible rape, forcible sodomy and two counts of forcible oral copulation, the trial court stayed punishment on the oral copulation and sodomy convictions under section 654. The People appealed and the high court reversed. "A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act." (23 Cal.3d at p. 553.) After finding this resolution to be consistent with past precedent, the court concluded by noting, "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other. and none was incidental to the commission of any other." (*Id.,* at pp. 553-554.) Consequently, the court reasoned, "section 654 does not preclude punishment for each of the sex offenses committed by defendant." (*Id.,* at p. 554.)

The Attorney General insists this lattermost statement in *Perez* is the sole test to be applied in determining the divisibility of any sex offenses. Such

---

[10]The Supreme Court has also consistently held that "[i]f one offense is necessarily included within another offense, section 654 bars punishment for both offenses." (*In re Adams* (1975) 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473].) Not only is punishment prohibited, but conviction of the included offense is barred as well. "Although the reason for the rule is unclear, this court had long held that multiple convictions may *not* be based on necessarily included offenses." (*People* v. *Pearson, supra,* 42 Cal.3d at p. 355; italics in original.)

is not the case, however. The "means/facilitated/incidental" test is only of use where the transaction involves different offenses. In that case, it is sensible to ask if one offense played a subsidiary role in the commission of the second crime. If the first crime was the means of, facilitated the commission of, or was merely incidental to the second crime, the proscription against multiple punishment of section 654 bars punishment for both offenses. Thus, in *People* v. *Greer* (1947) 30 Cal.2d 589 [184 P.2d 512] (cited in *Perez*), removing the clothing of the child victim prior to forcibly raping her would not support a punishment for lewd conduct under section 288 separate from one under section 261 because the undressing facilitated the rape. In this context, the test has been usefully applied in many cases. (See, e.g., *People* v. *Phillips* (1985) 169 Cal.App.3d 632, 642 [215 Cal.Rptr. 394] [rape (§ 261) separate from child molestation (§ 288)]; *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71-72 [204 Cal.Rptr. 124] [kissing victim on face and breasts (§ 288) separate from oral copulation of victim (§ 288a)]; *People* v. *Reynolds* (1984) 154 Cal.App.3d 796, 808-810 [201 Cal.Rptr. 826] [touching victim's vagina (§ 288) neither means of, facilitated, nor incidental to oral copulation of victim (§ 288a)]; *People* v. *Deletto* (1983) 147 Cal.App.3d 458, 475 [195 Cal.Rptr. 233] [same acts for oral copulation (§ 288a), sodomy (§ 286), and unlawful sexual intercourse (§ 261.5) cannot constitute basis for lewd act with child (§ 288)]; *People* v. *Liakos* (1982) 133 Cal.App.3d 721, 725 [184 Cal.Rptr. 182] [assault with intent to commit rape and oral copulation was means by which rape and oral copulation was attempted]; *People* v. *Perkins* (1982) 129 Cal.App.3d 15, 18-21 [180 Cal.Rptr. 763] [placing arm around victim (§ 288) incidental to unlawful sexual intercourse with victim (§ 261.5)]; *People* v. *Boyce* (1982) 128 Cal.App.3d 850, 860 [180 Cal.Rptr. 573] [rape (§ 261) not incidental to oral copulation (§ 288a)]; *People* v. *Singleton* (1980) 112 Cal.App.3d 418, 424 [169 Cal.Rptr. 333] [fellatio to stimulate erection not means of committing subsequent rapes and sodomies]; *People* v. *Cline* (1969) 2 Cal.App.3d 989, 993-996 [83 Cal.Rptr. 246] ["osculation" of vagina (§ 288a) incidental to course of lewd osculation of victim's body (§ 288)]; *People* v. *Webb* (1958) 158 Cal.App.2d 537, 540-543 [323 P.2d 141] [placing hands on victim (§ 288) incidental to forcing victim to fellate defendant (§ 288a)].)

On the other hand, the "means/facilitated/incidental" test is of no value when the identical crime is sequentially repeated in the same transaction. This is because it adds nothing to the analysis of the problem: one oral copulation, for example, does not play a subsidiary role in the repeated commission of that crime. The first crime cannot sensibly be described as a means of committing the second one, or as facilitating its commission or as being incidental to it. A test which would never apply is no test at all. Identical offenses committed in the same transaction are individually punishable, not on the "means/facilitated/incidental" test propounded by the Attorney General, but because they are discrete and separate crimes which cannot be

amalgamated under the sweeping objective of sexual gratification. "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability." (*Perez, supra,* 23 Cal.3d at p. 552.) Thus, *Perez* subjected the criminal transaction before it to the *alternative* tests of overbreadth of objective and "means/facilitated/incident," the latter criterion coming into play as a potential unifier of the offenses only after it had been determined the advanced objective was too broad to unify them (or vice versa).

The more difficult question, for which we find no clear guidance, is the manner in which repeated instances of the same type of sexual conduct may be divided. It is readily evident that the same criminal conduct, when separated by a different sexual offense, constitutes discrete crimes which demonstrate separate intents by a defendant to achieve different gratifications. In that instance, three crimes are committed and each may be separately punished and we have so held in *People* v. *Reeder, supra,* 152 Cal.App.3d at pages 916-917. Indeed, that rotation of offenses was the very sequence of crimes in *Perez.* The same is true when the same crime is repeated in one criminal transaction but against different victims. (See, e.g., *People* v. *Calhoun* (1983) 141 Cal.App.3d 117, 126 [190 Cal.Rptr. 115].)

But how does one determine whether repeated but identical acts against the same victim during one transaction without the intervention of a different crime constitute one offense or several? As the Court of Appeal noted in the context of instructions in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 910 [176 Cal.Rptr. 3], the "fact that a second forced oral copulation occurred within a few minutes during this sexual attack does not necessarily make this another separate crime any more than it would be true there are separate crimes of battery if the actor throws a right-hand punch to this victim and immediately follows it with a left-hand punch." As is the case with the boxer, the question here is when has a single sexual crime been improperly fragmented into multiple offenses.

We begin with the definition of a crime. A crime is "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, [specified] punishments . . . ." (§ 15.) The criminal "act" therefore includes all the elements of a crime and thus, like an act for purposes of double punishment, may involve more than a single act in the ordinary sense. For example, the crime of larceny entails not only the act of taking property but also of asporting it. (See *People* v. *Brady* (1987) 190 Cal.App.3d 124, 133 [235 Cal.Rptr. 248].) As we explained in *Brady,* the "duration of an offense depends upon the definition of the offense. The nature of the act forbidden reveals to us what is before, during,

and after it." (*Ibid.*) It is to the duration of the sexual offenses that we now turn.

Occasionally, the time lapse between the identical acts is sufficiently long that the court may declare that separate crimes have been committed as a matter of law. (See, e.g., *People* v. *Craft* (1986) 41 Cal.3d 554, 559, fn. 2 [224 Cal.Rptr. 626, 715 P.2d 585] [hour between first and second rape, at least 1 hour and 25 minutes between second and third rape; all three separately punishable under § 654].) But what if there is no significant time lapse? We have unearthed only two decisions of the Court of Appeal grappling with the application of section 654 (and inferentially with the identity of offenses) to sequential identical sexual acts in a short time span; unfortunately, in our view they both go awry. In *People* v. *Clem* (1980) 104 Cal.App.3d 337 [163 Cal.Rptr. 553], the meager facts listed state in their entirety the defendant "committed the first act of rape upon her. Within the space of approximately two to two and one-half hours, during which time the defendant held Ms. B. captive, the defendant succeeded in at least four more vaginal penetrations." (*Id.*, at p. 341.) In responding to the defendant's claim section 654 precluded imposition of five sentences of rape, the court simply read together section 261—which defines rape as an "act of sexual intercourse" —and section 263 (allowing any penetration to complete the crime) as defining a separate rape for each penetration. The court then stated without any analysis of the facts before it that the five rapes could be separately punished under *Perez*. (*Id.*, at pp. 346-347.) In the second case, *People* v. *Marks* (1986) 184 Cal.App.3d 458 [229 Cal.Rptr. 107], the defendant committed an act of sodomy in one part of a room, then forced his victim to another part of the room where he committed another act of sodomy. (*Id.*, at pp. 464-465.) Following the logic of *Clem*, the court found the defendant had twice placed his penis in contact with the anus of his victim—thus committing two acts of sodomy—and therefore could be punished twice. (*Id.*, at pp. 465-466.) We take issue with this analysis.

To define a sexual offense along the lines of each individual penetration or contact would lead to absurd results.[11] A defendant who is able by superior

---

[11]Although they are not explicit on the point. we do not read these decisions to hold that each sexual stroke in the course of rape, sodomy or oral copulation constitutes a separate crime. Rather, as we understand them, it is each separate penetration, preceded by withdrawal or some other momentary disengagement, that constitutes the new offense. In this sense, a hundred penetrations would equal a hundred crimes, all separately punishable.

Our quarrel is with not the results reached in *Clem* and *Marks*; it is with their conclusion that each new penetration constitutes a new crime in all cases and under all circumstances as a matter of law. Indeed, perhaps manifesting some discomfort with the *Clem* analysis, the *Marks* court also noted facts under which it could find the two penetrations to be separate acts. (184 Cal.App.3d at p. 466, fn. 8.) It may well have been the case in *Clem* that five separate rapes occurred during the course of the two and one-half hours attack. But the issue, in our view, cannot be resolved by simply noting that there were five penetrations. *Clem*'s analysis was cited with approval in dictum in *People* v. *Vela* (1985) 172 Cal.App.3d 237, 243 [218 Cal.Rptr. 161], and we obviously disagree with that dictum as well.

gymnastic abilities to maintain his initial penetration for an hour despite the struggles of his victim would be guilty of only one crime, whereas the less physically overpowering defendant who might wind up frequently disengaging and reinserting over a period of a few minutes would be guilty of a multitude of crimes. Simply because, under its technical definition, a crime has begun, does not mean that it has also simultaneously ended. ■ As is the case with one crime of battery for many strikings, there is but one sex offense for many penetrations unless that crime has otherwise been completed. The mere repetition of the same act in one episode should not give rise to multiple convictions. (Cf. *People* v. *Gardner* (1979) 90 Cal.App.3d 42, 46-49 [153 Cal.Rptr. 160] [series of thefts of carcasses occurring during a single transaction constituted only one offense of grand theft].)

We are not left entirely without guidance in determining when one sexual offense is completed and another begun. If the defendant achieves a sexual climax and then pauses, this rejuvenating interlude provides a clear delineation between offenses. Such a bright-line dividing point is not always present, however, and the mere absence of a climax does not itself indicate indivisibility. (*Reeder, supra,* 152 Cal.App.3d at p. 914.) As we have already noted, the length of time between similar acts may be sufficiently long in and of itself to support an inference of separate intent on the part of a defendant. "It seems clear that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Beamon, supra,* 8 Cal.3d at p. 639, fn. 11.) But as the time interval narrows, it becomes increasingly less suitable a dimension by which to measure divisibility. The shortcomings of simply looking at the time period involved can be overcome if we utilize a test propounded by the Legislature in a related context. The recent amendment of section 667.6, subdivision (d), states in relevant part, "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."[12] While the definition of separate offenses for purposes of section 667.6, subdivision (d) cannot be the ultimate criterion for divisibility of acts into separate crimes, its employment of the concept of reflection can usefully be applied. We therefore believe that one intelligent and objective means of distinguishing iterated sexual acts for the purpose of determining whether one or

---

[12]This amendment reflects the meaning we had ascribed to the subdivision in *Reeder, supra,* 152 Cal.App.3d at p. 915, and was specifically enacted to establish an objective test and to abrogate the different holding of *People* v. *Craft, supra,* 41 Cal.3d 554. (Stats. 1986, ch. 1431, § 2.)

more sexual crimes have been committed is to ascertain from the totality of the facts whether the defendant had a reasonable opportunity to reflect before renewing the attack. The use of reflection as a criterion of separateness of offenses is not new to the criminal law. (See, e.g., *People* v. *Calhoun, supra,* 141 Cal.App.3d at p. 126 [two rapes "separated by some time and thought on defendant's part"]; *State* v. *Garcia* (1980) 288 Ore. 413, 428 [605 P.2d 671, 679] ["Separate punishments for several acts of sodomy would be appropriate if the defendant, after one act, starts anew after a time of reflection."].) We adopt it here as one facet of the test of determining whether multiple sex offenses have been committed. Under this standard, when there is a pause in the attack sufficient to give defendant a reasonable opportunity to reflect upon his conduct, and the attack is nevertheless renewed, a new and separate crime is committed.

In summary, we hold that identical sexual acts constitute separate and discrete crimes when they are separated (1) by the commission of a different sexual offense, (2) by sexual climax, (3) by an appreciable passage of time, or (4) by a reasonable opportunity for reflection.[13]

Having determined the test for multiple sex offenses, we turn once again to the proscription against double punishment. *Perez* held that "[t]he purpose of this legislative protection [under section 654] against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability." (*Perez,* 23 Cal.3d at pp. 550-551.) Consistent with that principle, the court concluded that a "defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (23 Cal.3d at p. 553.) The court consequently declined to extend the single intent and objective test of section 654 to preclude punishment for each sexual offense. (*Ibid.*) In that case the defendant committed a variety of sexual crimes and when a crime was repeated it was separated by the commission of a different offense. Here the defendant committed one crime in a variety of ways and some varieties were repeated without any intervening acts of a different lewd nature. Does it make any difference if the same conduct is repeated without some other crime intervening in between? In our view, it does not. A rapist who commits two rapes is more culpable than a defendant who commits only

---

[13]We do not undertake to define in term of minutes how long a pause must be to constitute an "appreciable" time or for a reasonable opportunity to reflect. The diversity of sexual attacks preclude such a mechanical definition. As the high court noted in the context of multiple punishment, "[b]ecause of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance." (*People* v. *Beamon, supra,* 8 Cal.3d at p. 636.) But be that as it may, sexual offenses have been treated differently for purposes of multiple punishment and there is no reason why general guidelines for multiple convictions should not be fashioned.

one. The intent and objective of the repeat violator, as the *Perez* court noted, is simply different than the offender who only commits one sexual crime. Consequently, section 654 does not preclude punishment for each separate but identical sex offense committed by defendant.

With these criteria established, we turn to the facts of the case before us. To assess the defendant's contention properly, it has been the unhappy task of this court to examine closely the negative strips and the photographs made from them for the purpose of resequencing the photographs from the order in which they were admitted into evidence to a series which reflects the order of the negatives on the strips. Although there was no evidence to establish the time interval between negatives, the negatives on each roll are so similar as to appear to be individual images on a roll of movie film; we can readily infer that defendant made use of the auto winder and cable release (the latter being clearly visible in a number of photos) found by the officer. Furthermore, defendant and victim are in a bathtub in one roll and their hair is wet throughout the other two rolls, so we may also infer all the photos were taken over a brief period on one occasion.

The information connected each of the charged eleven counts with a numbered photograph. Thus, for example, count 1 alleged a lewd touching of the penis "as depicted in photo #7." The order of the counts, however, does not follow the sequence in which the photographs were taken or the offenses committed. The counts actually occurred in this order: counts 3, 2, 1, 6, 5, 4, 9, 7, 10, 8, and 11. Without describing each negative and photograph in nauseating detail, suffice it to say that one roll of negatives depicts events in the bathtub and the other two those occurring on the bed. ■ Counts 1, 2, and 3 all involve acts occurring in the bathtub. All three counts involve the defendant's uninterrupted efforts to obtain sexual gratification by having the infant play with his penis; there is no indication of divisibility on the basis of another offense, time, climax, or opportunity to reflect between the photographs. Consequently, we conclude that only one offense has been committed and not three. Counts 1 and 2, the later occurring counts, must be reversed.

Count 6 involves a lewd touching on the bed. This count constitutes a separate crime from those occurring in the bathtub because defendant has had a reasonable period in which to reflect upon his course of conduct: he has had to remove himself and the infant to his bed and change the film in his camera. Rather than cease upon the the realization of the monstrous acts he had committed, he instead obviously desired to indulge his perverse instincts further. It is distinct from the remaining counts committed on the bed because they were all based upon the commission of other types of crime.

Counts 5 and 4, the next two counts, both involved acts of fellatio. They are distinguishable only by a change of position. The photographs reflect that

defendant momentarily disengaged, moved slightly and then resumed. Since these counts do not meet the test for separate offenses, defendant could only be convicted of one offense for this conduct. The same is true for counts 9 and 7 which followed. Both of these counts involved oral copulation of the vagina and are distinguishable only by a change in position. Thus counts 4 and 7 must be reversed.

The remaining three counts, counts 10, 8, and 11, are all separate offenses because they were based upon the rotation of different offenses. ▆▆▆ These counts reflect the commission of an undefined lewd act, followed by oral copulation, and then by an act of unlawful sexual intercourse.[14] All these crimes therefore are separate offenses and are separately punishable.

### III*

. . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction on counts 1, 2, 4 and 7 is reversed with directions to the trial court to dismiss those counts. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections.

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied June 2, 1987.

---

[14]It would approach the physically impossible to presume actual vaginal intercourse was actually consummated on this infant. Nevertheless, intercourse under the code only requires the slightest penetration for rape (§ 263) and presumably that applies to unlawful sexual intercourse as well, even though that offense is no longer called rape. Thus, labial penetration will suffice.

*See footnote, *ante,* page 1084.