Filed 2/4/15  P. v. Richard CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TRAVON DION RICHARD,<br><br>　　　Defendant and Appellant. | B251125<br><br>(Los Angeles County<br>Super. Ct. No. BA402793) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed in part and reversed in part with directions.

Law Office of Eileen M. Rice and Eileen M. Rice, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Travon Dion Richard, appeals his conviction for burglary (2 counts), kidnapping (2 counts), stalking, battery and violation of a protective order (Pen. Code, §§ 459, 207, 646.9, 243, 273.6).[1] He was sentenced to state prison for a term of five years four months.

The judgment is affirmed in part and reversed in part.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

Defendant Richard and Catalina R. had a boyfriend-girlfriend relationship for about 18 months. Near the end of 2011, Catalina unilaterally ended the relationship. Although she told Richard to stop contacting her, he persisted in calling her on the phone, showing up at her home, and pursuing her in public.

In January 2012, Catalina and her infant son were living in a gated apartment complex near Echo Park. Because Richard continued to harass Catalina, she obtained a restraining order on January 30, and then a second restraining order in February. Despite the restraining orders, Richard kept bothering Catalina by calling her on the phone, knocking on her door and throwing pebbles at her window. One time, he followed her on the street and into a store. Another time, he harassed her on a public bus and then tried to grab her purse after they disembarked.

Despite this harassment, Catalina occasionally relented and allowed Richard inside her apartment to eat and shower. She felt she had no choice because he seemed to be homeless. But the building manager told Catalina she couldn't live there unless Richard stayed away.

On September 7, 2012, Catalina was home with her son when Richard appeared at her door and demanded to be let in. Surreptitiously, Catalina called 911. She did not want Richard to know she was making the call because she wanted the police to find him

---

[1] All further references are to the Penal Code unless otherwise specified.

there and arrest him. Richard manipulated the door knob until he managed to force the door open and enter the apartment.[2] When he gained entry, Richard punched Catalina in the back of the head, knocking her to the floor. Then he started grabbing some of her possessions. When she asked him what he was doing, Richard said he needed money. He took a laptop computer, a house phone and a digital camera, and then walked out of Catalina's apartment.

Catalina was still on the floor when Richard left. She got up and grabbed her son, who had been crawling around the apartment. Then, about 15 seconds after he left, Richard came running back into the apartment again, still holding Catalina's possessions. He grabbed Catalina and said, "You're coming with me." When she refused, he said: "No. You're coming with me. You called the cops. You're coming with me." When Catalina pointed out she was barefoot, Richard "grab[bed her] sandals from . . . under the bed" and said, "Come on. I have your sandals. Let's go." Richard pulled Catalina out the apartment door and forced her down a hallway to the top of a staircase, and then down a flight of stairs. Catalina, who was still holding her child in her arms, stopped resisting because she was concerned for her son's safety. Richard walked them out of the apartment building. When they reached the back entrance to the apartment complex, they could hear police sirens. At that point, Richard released Catalina, handed back her laptop and phone, and ran off with her camera.

2. *Defense evidence.*

Richard's aunt and cousin testified about his relationship with Catalina.

---

[2]    Catalina testified, "He starts to . . . wiggle the doorknob from side to side coming in. The door was locked. I had a couple of locks on there. He just was trying to force the door to come in. I was still on the phone with the cops at the time." She also testified Richard "ended up pushing the door in or busting it open, kicking it open. I'm not sure how . . . he did it, but he got in."

3

## CONTENTS

1. Richard's two entries into Catalina's apartment constituted only one burglary.

2. The trial court violated section 654, the prohibition on multiple punishment, when it sentenced Richard to concurrent prison terms on some counts.

3. The trial court erred by imposing a consecutive sentence on one of the burglary convictions.

## DISCUSSION

1. *Richard's two entries constituted two burglaries.*

Richard contends his two entries into Catalina's apartment constituted only a single burglary. This claim is meritless.

a. *Legal principles.*

"The crime of burglary consists of an act – unlawful entry – accompanied by the 'intent to commit grand or petit larceny or any felony.' (§ 459.) One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042, fn. omitted.) Hence, "the gist of [burglary] is *entry* with the proscribed intent, and . . . such an entry constitutes the completed crime of burglary 'regardless of whether . . . any felony or theft actually is committed.' [Citation.]" (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18.)

"Commonly, [the burglar's intent] must be inferred from the circumstances of the charged offense or offenses. [Citation.] ' "While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." [Citation.]' " (*People v. Holt* (1997) 15 Cal.4th 619, 669.) " ' "When the evidence justifies a reasonable inference of felonious intent, the verdict may not be disturbed on appeal. [Citations.]" ' [Citation.]" (*People v. Cain* (1995) 10 Cal.4th 1, 47.) A burglar's culpable specific intent can include a wide variety of felonies that do not involve

4

removing property from the building. (See, e.g., *People v. Mason* (1960) 54 Cal.2d 164 [entry with intent to commit felonious assault]; *People v. Martinez* (2002) 95 Cal.App.4th 581 [entry with intent to take a shower using victim's soap, shampoo and water]; *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758 [entry with intent to commit indecent exposure]; *People v. Salemme* (1992) 2 Cal.App.4th 775 [entry with intent to sell fraudulent securities].)

"Multiple entries into the same residence may constitute multiple burglaries if the defendant has the requisite intent on each entry." (2 Witkin, Cal. Crim. Law (4th ed. (2012) Crimes – Property, § 142, p. 205.) "Under section 459, burglary consists of an unlawful entry with the intent to commit a felony. Thus, the crime is *complete*, i.e., one may be prosecuted and held liable for burglary, upon entry with the requisite intent. [Citation.] It follows, therefore, that every entry with the requisite intent supports a separate conviction." (*People v. Washington* (1996) 50 Cal.App.4th 568, 578-579 [defendant, who entered apartment twice in one day over course of several hours, committed two burglaries].)

b. *Discussion.*

Citing *In re William S.* (1989) 208 Cal.App.3d 313, Richard contends he committed only a single burglary, despite having entered Catalina's apartment two times, because "there was no appreciable amount of time or opportunity for reflection between the two entries into the apartment. [Catalina] testified that appellant left the apartment, and he returned through the open door within mere seconds." *William S.* held that two entries into the same house, separated by several hours, constituted two burglaries because there had been "plenty of time to reflect." (*Id*. at p. 317.) This result was based on *People v. Hammon* (1987) 191 Cal.App.3d 1084, which had posited a "reasonable opportunity to reflect" test: "[W]hen there is a pause . . . sufficient to give defendant a reasonable opportunity to reflect upon his conduct, and the [action by defendant] is nevertheless renewed, a new and separate crime is committed." (*Id*. at p. 1099.) But, as Richard acknowledges, *Hammon* was subsequently disapproved in *People v. Harrison* (1989) 48 Cal.3d 321, 333, a case in which the defendant was convicted for three counts

5

of violating section 289 (forcible sexual penetration) on the same victim over a seven-to-ten-minute time span.

*People v. Washington*, *supra*, 50 Cal.App.4th at p. 578, explained how the *Harrison* analysis of multiple sexual offenses would apply to the multiple burglary situation: "[T]he court in *Harrison* concluded that since crimes of sexual penetration are complete upon penetration, however slight, multiple penetrations supported multiple convictions. We point out that the court's analysis was not based on the sexual *nature* of the offenses or the fact that the offenses involved physical acts against people. Rather, the analysis was dictated solely by the statutory language and the temporal threshold for establishing guilt, i.e., when the offense is complete for purposes of prosecution. [Citation.] Thus, we do not find . . . *Harrison*'s analysis inherently limited to sexual offenses and consider it proper and appropriate to apply it here." (*Washington*, at p. 578.)

*Washington* concluded the "concern about absurd results is better resolved under section 654, which limits the punishment for separate offenses committed during a single transaction, than by a rule that, in effect, creates the new crime of continuous burglary." (*People v. Washington*, *supra*, 50 Cal.App.4th at p. 578.) As *Washington* explained, *William S*. "felt obligated to fashion a special test for multiple-entry burglary cases. The court reasoned that under certain circumstances, allowing separate convictions for every entry could produce 'absurd results.' [Citation.] For example, where 'a thief reaches into a window twice attempting, unsuccessfully, to steal the same potted geranium, he could potentially be convicted of two separate counts.' [Citation.]" (*Id*. at p. 575.)

In the case at bar, there was no danger of an absurd result. As the Attorney General points out, the trial evidence established that "[t]he first time [Richard] entered with the *intent to steal* the victim's property, and the second time with the *intent to kidnap* the victim. Thus, appellant committed separate burglaries because each time he entered the victim's apartment, he did so with separate and distinguishable intents and objectives." Richard argues the extremely short time between his two entries into Catalina's apartment means he did not have time to contemplate committing a different crime the second time. This argument would have been more convincing if Richard had

6

done something—such as stashing the stolen items right outside Catalina's door before going back into her apartment—tending to indicate his initial plan had been to carry out both a burglary *and* the kidnappings. To the contrary, however, the evidence shows that after initially entering Catalina's apartment to commit theft, he left with the loot but then had a new idea and re-entered the apartment, still carrying the loot under his arm, in order to commit the kidnappings. Indeed, Richard acknowledges as much when he states, in a different connection: "Indeed, appellant's actions suggested that forcing [Catalina] and her son to leave the apartment with him *was an afterthought*." (Italics added.) We agree.

We conclude Richard was properly convicted of having committed two burglaries.

2. *Section 654 claims.*

Richard contends the trial court erred by failing to stay the sentences it imposed for the second burglary, the second kidnapping, the battery, and the violation of a restraining order because these crimes were all committed with a single intent and objective. We disagree, except as to the concurrent term imposed on the second burglary conviction.

a. *Legal principles.*

Section 654, the prohibition against multiple punishment, provides in pertinent part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them. [Citations.] 'We must "view the evidence in a

7

light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312-1313.) A trial court's finding, even if only implicit, that a series of crimes involved more than one objective "must be sustained on appeal if supported by substantial evidence." (*People v. Osband* (1996) 13 Cal.4th 622, 730.)

b. *The sentencing hearing.*

At the sentencing hearing the trial court chose the first kidnapping conviction as the principal term, on which it imposed a mitigated three-year term. The court rejected the prosecution's request for an aggravated term, saying California Rules of Court, rule 4.421(a)(1) (aggravating factor for threat of bodily injury/callousness) was inapplicable because this had not been a standard kidnapping. Noting that Richard had waited for Catalina to put her shoes on, the trial court said "there was really very little violence or serious danger involved," and it appeared Catalina was not "terribly afraid" of Richard.

The trial court then imposed a consecutive term on the first burglary conviction (1/3 the midterm sentence for an additional term of one year four months), and a consecutive term on the stalking conviction (1/3 the midterm sentence for an additional term of one year). This amounted to a total actual sentence of five years four months. The court then imposed concurrent prison terms for the second burglary, the second kidnapping, the battery and the violation of a restraining order. It is the imposition of these concurrent terms that Richard is now challenging.

c. *Discussion.*

Richard contends section 654 applied to all the concurrent sentences because he had only a single intent and objective in committing these offenses. He argues his "two entries into [Catalina's] apartment within a 15-second time period, the act of hitting her on the head, grabbing her and her young son – all within the context of violating his restraining order – reflected a continuous course of conduct and intent. Moreover, the

8

battery and violation of protective order were means to an end of effectuating the purpose of the burglary."

However, we agree with the Attorney General that the two kidnappings were separately punishable because they were crimes of violence against separate victims. " '[T]he limitations of section 654 do not apply to crimes of violence against multiple victims.' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.) "The multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784.)

We also agree with the Attorney General that the trial court's implied finding that the battery and violation of the restraining order convictions were not part of the same course of conduct as the initial burglary conviction is supported by substantial evidence. As the prosecutor argued to the jury, Richard's violation of the restraining order had been going on ever since February and was not restricted to his conduct on the day of the kidnappings. And there was evidence Richard punched Catalina for the independent reason that he was mad at her for calling the police: Catalina testified that when Richard initially broke into the apartment, he said, "Why did you call the cops on me? I thought you loved me. Why did you call the cops?" And then he punched her in the head.

However, we do not agree with the Attorney General regarding the concurrent sentence for the second burglary conviction. It is apparent Richard committed the second burglary solely in order to commit the kidnappings. The Attorney General argues it was proper to sentence Richard for both the second burglary and the kidnappings under the multiple victim rule. But Richard had already been sentenced for a violent crime against each victim (Catalina and her son) arising out of the second burglary because the trial court imposed two kidnapping sentences. Sentencing Richard a second time as to one of those victims to account for the second burglary constituted double punishment under section 654. (See, e.g., *People v. Miller* (1977) 18 Cal.3d 873, 886, disapproved on other grounds in *People v. Oates*, *supra*, 32 Cal.4th at pp. 167-168, fn. 8 [although defendant could be sentenced for both burglary and robbery because there were two store

9

employees, he could not be additionally sentenced for assaulting the burglary victim: "Section 654 does . . . preclude the imposition of sentence as to the assault conviction. That crime was committed during the same course of conduct and against the same victim as in the case of the aggravated burglary conviction and defendant cannot be punished for both of those convictions."].)

The four-year concurrent term imposed on the count 2 burglary conviction will be vacated and that sentence will be ordered stayed. (See *People v. Sloan* (2007) 42 Cal.4th 110, 116 [when section 654 prohibits multiple sentencing for permissible multiple convictions, " 'trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited' "].)

3. *Consecutive terms on kidnapping and burglary were proper*.

Richard contends the trial court erred when it imposed a consecutive term on the first burglary conviction "because all of appellant's actions during the incident were part of one continuous course of conduct." This claim is meritless.

California Rules of Court, rule 4.425(a) provides that the relevant criteria affecting the decision to impose consecutive rather than concurrent sentences includes "[f]acts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other." As discussed, *ante*, there was substantial evidence showing the first burglary had been carried out in order to commit the theft of Catalina's belongings, and was independent of the kidnappings which arose out of the second burglary.

10

## DISPOSITION

The judgment is affirmed in part and reversed in part. The concurrent four-year sentence imposed on the count 2 burglary conviction is vacated and that sentence is hereby ordered stayed. In all other respects the judgment is affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


KITCHING, J.


ALDRICH, J.

11