[No. F022671. Fifth Dist. Mar. 20, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM IRVIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I-IV, VI, and VII.

1064

**Counsel**

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Jane A. Cardoza and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WISEMAN, J.**—In this case we address a variety of challenges to the three strikes law and several sentencing issues. We affirm the convictions and remand for resentencing.

### PROCEDURAL SUMMARY

By information filed on May 19, 1994, defendant was charged with burglary (count 1; Pen. Code,[1] § 459), assault with a deadly weapon (count 2; § 245, subd. (a)(1)), false imprisonment (count 3; § 236), 15 counts of anal/genital penetration with a foreign object (counts 4-18; § 289, subd. (a)), 5 counts of oral copulation (counts 19-23; § 288a, subd. (c)), sexual battery (count 24; § 243.4, subd. (a)) and dissuading a witness from reporting a crime (count 25; § 136.1, subd. (b)(1)), a misdemeanor. In addition, the information alleged special allegations as follows: as to all felony counts (1-24), that defendant had a prior "strike" (§ 667, subd. (e)(1)) and had served a prior prison term (§ 667.5, subd. (b)); as to all counts except counts 3, 24, and 25, that defendant had a prior serious felony conviction (§ 667, subd. (a)); as to counts 2 and 3, that defendant personally used a deadly weapon (§ 12022, subd. (b); and, as to counts 4 through 24, that defendant was armed with a deadly weapon (§ 12022.3, subd. (b)).

Defendant pled not guilty and denied the allegations. Before trial, the weapon use allegation in count 2 only was dismissed.

Following jury trial, defendant was convicted as charged and the deadly weapon "use" and "armed" enhancement allegations were found true. Following a court trial, the prior serious felony and prior prison term allegations were also found true.

Probation was denied, and defendant was sentenced to prison for a total unstayed term of 474 years.

Timely notice of appeal was filed.

### FACTUAL SUMMARY

The defendant forcibly entered the home of Karen C. shortly after Karen's husband had left for work around 6 a.m. Defendant apparently bent the garage door to enter. At this time, Karen's three-year-old son entered the shower as Karen got out of it. While Karen was dressing in her bedroom,

---

[1]All statutory references are to the Penal Code unless otherwise noted.

defendant, whom Karen had never seen before, entered the bedroom holding a knife. At defendant's direction, Karen told her son to stay in the shower. Defendant then took Karen to her son's bedroom and had her sit on the bed. He asked Karen if she had any valuables in the house, including money, guns or jewelry. She responded she did not. Defendant told Karen to lie back. Karen, who wore only her underpants and bra, did so. Defendant then removed her underpants and began his sexual assault.

Defendant began massaging Karen's vaginal area and inserted his fingers "in and out" of her vagina "about four or five times." During this same time period he "stuck a finger in [her] rectum a couple of times . . . ." While he inserted his finger(s) in Karen's anal and genital areas, defendant kept asking whether she would tell the police or her husband about what he was doing to her. He threatened to hurt her if she did. Defendant began to orally copulate Karen's vagina. He stopped momentarily when Karen's infant, who had been asleep in her crib, began to cry. Defendant asked her if she wanted to get a bottle for the baby and she responded, " 'No, she will stop.' " Defendant then resumed his oral copulation of Karen.

Subsequently, defendant stopped to close the bedroom door. Defendant stated: "I don't want that little rascal walking in on us." After shutting the door, defendant began to massage and put his fingers into Karen's vagina again another four or five times. Defendant then placed Karen's legs over his shoulders and began to orally copulate her vagina again for about five to ten minutes. Defendant stopped and told Karen to get up. He looked out the window and asked Karen about the dogs that were barking and a neighbor he could see outside. This took about two minutes.

Defendant next lay down on the bed and asked Karen to sit on his face. He orally copulated her vagina again and fondled her left breast while Karen sat on his face.

Subsequently, defendant ordered Karen to get off his face and he directed her into the bathroom to shower. While Karen showered, defendant stated, " 'we have to get all my saliva out of you,' " and he began washing her. While washing her, defendant inserted two of his fingers in her vagina and was washing it in and out "about six" times over the course of about four or five minutes.

A while later, defendant left. He was arrested the next day, at which time he gave a statement to the police. Defendant testified he had been having an affair with Karen, and that his admitted single act of oral copulation was consensual.

DISCUSSION

I.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*V.   The trial court did not adequately explain its reason for imposing mandatory full consecutive terms on the sex offenses.*

■   Defendant contends the trial court erred by sentencing him under section 667.6, subdivision (d),[6] (subdivision (d)) on all sex offense counts. Respondent counters defendant's contention is not reviewable on appeal and lacks merit. Defendant's contention is reviewable on appeal. We remand for resentencing pursuant to certain guidelines, as discussed.

Defendant concedes some of his sex offense acts arguably could make up four "separate occasions." If so, sentencing under subdivision (d) was appropriate. However, he contends not all of the sex acts were committed on "separate occasions." Therefore, defendant argues, the mandatory provisions of subdivision (d) did not apply across the board.

Respondent complains defendant's contention is not reviewable on appeal since he does not adequately specify which acts or counts he is contesting. We find defendant's contention is sufficiently clear with respect to which counts he alleges did not occur on a separate occasion. Even so, if defendant was sentenced inappropriately under even one count pursuant to subdivision (d), the case must be remanded for resentencing, unless we can determine the error was harmless.

The parties agree on the applicable law, as they both rely on *People* v. *Corona* (1988) 206 Cal.App.3d 13 [253 Cal.Rptr. 327], and *People* v. *Pena* (1992) 7 Cal.App.4th 1294 [9 Cal.Rptr.2d 550]. More recently, the issue of

---

*See footnote, *ante*, page 1063.
[6]Section 667.6, subdivision (d) provides, in pertinent part:
"A full, separate, and consecutive term shall be served for each violation of . . . section 289 . . . or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person if the crimes involve separate victims or involve the same victim on separate occasions.
"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

consecutive terms for multiple sex crimes imposed pursuant to subdivision (d) was addressed in *People* v. *Plaza* (1995) 41 Cal.App.4th 377 [48 Cal.Rptr.2d 710]. *Plaza* upheld the trial court's finding of five "separate occasions" committed against the same victim. In doing so, it applied the reasoning of *Pena* and *Corona.*

In *Pena,* the court summarized *Corona*, and the case of *People* v. *Hammon* (1987) 191 Cal.App.3d 1084 [236 Cal.Rptr. 822], disapproved by *People* v. *Harrison* (1989) 48 Cal.3d 321, 334 [256 Cal.Rptr. 401, 768 P.2d 1078], as follows:

"The sexual assaults in *Corona* occurred in a car under the defendant's control. Defendant digitally penetrated the victim's vagina and orally copulated her, before finally raping her. He left the car for five minutes, returned, and raped her again.

"The court held mandatory consecutive sentences for the two *rapes* which occurred five minutes apart were proper. It held improper consecutive sentences for sexual acts occurring before the first rape. The court found specifically there was no evidence of 'any interval "between" these sex crimes affording a reasonable opportunity for reflection; there was no cessation of sexually assaultive behavior hence defendant did not "resume sexually assaultive behavior." ' (206 Cal.App.3d at p. 18.)

" . . . . . . . . . . . . . . . . . . . . . .

"Applying its own standard to that case, the court first held the defendant could not be separately punished, under section 654, for three counts of lewd touching of the penis, where the photographs depicted 'defendant's uninterrupted efforts to obtain sexual gratification by having the infant play with his penis.' [Citation.] The acts were not divisible on the basis of another offense, time, climax, or opportunity to reflect. Separate punishment was proper, however, for a lewd touching on the bed because defendant had a reasonable opportunity to reflect when he removed himself and the infant from the bathtub to his bed and changed the film in the camera.

"Most importantly, however, the court held two separate counts of fellatio could not be upheld where the two relevant photographs depicted the act of fellatio in two separate positions. 'The photographs reflect that defendant momentarily disengaged moved slightly and then resumed. Since these counts do not meet the test for separate offenses, defendant could only be convicted of one offense for this conduct.' [Citation.] The same was true for two counts of oral copulation, which were distinguishable only by a change in position.

"While there is admittedly little authority upon which to decide this issue, the cases discussed above strongly suggest appellant did not have a 'reasonable opportunity to reflect' between his acts of rape and forcible oral copulation. As was the case in *People* v. *Corona*, nothing in the record before this court indicates *any* appreciable interval 'between' the rape and oral copulation. After the rape, appellant simply flipped the victim over and orally copulated her. The assault here was also continuous. Appellant simply did not cease his sexually assaultive behavior, and, therefore, could not have 'resumed' sexually assaultive behavior.

"Thus, the case at bar is strongly analogous to *Corona*, in which separate sexual acts occurring one after the other were held to be committed on one 'occasion.' This conclusion is unaffected by the fact the oral copulation and digital penetration in *Corona* occurred before the rape, and here the oral copulation occurred afterwards.

"Neither does our conclusion change when we consider appellant had to change positions in order to orally copulate Ms. B. The holding in *Hammon* strongly suggests a change in positions, alone, is insufficient to provide a perpetrator with a reasonable opportunity to reflect upon his actions, especially where the change is accomplished within a matter of seconds." (*People* v. *Pena*, *supra*, 7 Cal.App.4th at pp. 1315-1316.)

In this case, in sentencing defendant, the court stated in pertinent part:

"The reason for the consecutive sentences, that is those that are going to be run consecutive, would be that these are crimes which fall within the dictates of 667.6. In particular, the offenses of 289 and 288a, that code section allows for a fully consecutive sentence. The jury having found that there were separate counts of each particular offense committed, it then is incumbent upon me to determine whether or not the crimes against the victim were committed on separate occasions. I have to consider whether in the commission of any of these offenses the defendant had a reasonable opportunity to reflect upon his actions, upon such reflection, then resume the sexually assaultive behavior that he engaged in.

"I am making the determination that, based upon the facts of this case, again after hearing the prelim and after hearing the jury trial, that there was opportunity for a reflection on behalf of the defendant. This went over a duration of time these various acts were committed, then there was a brief interval. As Miss Frazier indicated, he would stop, have a brief conversation, catch his breath, go back and commit other acts. There was some moving around within the house when these acts were committed. In other words, at

one point in time several of the acts were in one room, they went on into another room when the acts continued there.

"Accordingly, I find that under those dictates that a consecutive sentence would be in order."

This statement by the court does not provide a sufficient analysis of the facts to allow this court to determine why it concluded all 20 sex offense acts must have occurred on "separate occasions" within the meaning of subdivision (d). In order to sentence separately on each count under subdivision (d), each count would have had to occur on a separate occasion as defined in subdivision (d). (*People* v. *Thompson* (1982) 138 Cal.App.3d 123, 126 [187 Cal.Rptr. 612].) If the court was intending to sentence pursuant to subdivision (c) of section 667.6, "[I]t was improper as it did not provide a sufficient statement of reasons." (*People* v. *Roberson* (1988) 198 Cal.App.3d 860, 868 [244 Cal.Rptr. 51].)

To assist the court at resentencing, we provide the following guidelines:

(1)  *People* v. *Corona, supra*, 206 Cal.App.3d 13, is factually distinguishable from this case. In *Corona*, the prosecutor took the position there were only two episodes of sex offenses, stating, " 'it is difficult to argue that the oral copulation and foreign object rape, occurring just prior to the rapes, are themselves separate episodes.' " (*Id.* at p. 16.) Such a concession is remarkable since subdivision (d) provides "neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." In any case, based upon the prosecutor's position, it is not surprising the Third District upheld the trial court's imposition of consecutive sentences on two "separate occasions" under subdivision (d). Here, there is no such concession from the prosecutor.

(2)  *People* v. *Pena, supra*, 7 Cal.App.4th 1294, which relies upon *Corona*, merely upholds the trial court's findings on the issue of "separate occasions" noting an appellate court is "not at liberty to overturn the result unless no reasonable trier of fact could decide that there was a reasonable opportunity for reflection." (*Id.* at p. 1314.)

(3)  To the extent the facts of *Corona, Pena,* or *Plaza* suggest a finding of "separate occasions" requires a change of location or an obvious break in a perpetrator's behavior, we disagree. Subdivision (d) provides otherwise. What the trial court must decide is whether "the defendant had a reasonable

opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." A violent sexual assault cannot and should not be considered in the same light as sexual acts shared between willing participants. Consensual sex may include times when the participants go back and forth between varied sex acts, which they consider to be one sexual encounter. By contrast, a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter. Such a sexual assault consisting of multiple types of sex acts committed against the victim is not motivated by sexual pleasure. Instead, it is frequently intended to degrade the victim. Sexual acts, such as those committed by defendant, are the antithesis of a consensual sexual encounter and should not be viewed the same way. Therefore, at sentencing a trial court could find a defendant had a "reasonable opportunity to reflect upon his or her actions" even though the parties never changed physical locations and the parties "merely" changed positions. If a court concludes such a finding is appropriate, it must clearly explain its reasoning based upon a dispassionate review of the facts.

With these guidelines in mind, we note defendant states there are arguably four separate episodes of assaultive behavior, which he defines as follows:

"The first episode began after appellant entered the prosecutrix's home and led to her son's bedroom. There he inserted his finger into the prosecutrix vagina four times and inserted his finger in her rectum twice. This was followed by an act of oral copulation. The episode ended when appellant left the prosecutrix on the bed and shut the bedroom door.

"The second episode began when appellant returned to the bed after closing the door and then inserted his finger into the prosecutrix's vagina four or five times and then performed an act of oral copulation. This episode ended when appellant's attention was directed away from the prosecutrix by the sound of a barking dog.

"The third episode began when appellant directed the prosecutrix to 'sit on his face.' This was followed by an act of oral copulation. This act was momentarily interrupted when appellant stopped and made a comment to the woman.

"The third episode ended and the fourth one began when appellant took the prosecutrix to the bathroom and had her bath [sic] in the shower. During the shower, appellant digitally penetrated the prosecutrix six times. This episode ended when the shower ended."

We doubt any reasonable trier of fact could find that every act or offense was committed on a separate occasion. Given the manner in which the

numerous digital penetrations were described by the victim in her testimony, it seems unlikely that all 20 sex offenses of which defendant was convicted occurred on "separate occasions." However, we also do not believe the trial court at resentencing is constrained to accept the defendant's suggestion of finding only four "separate occasions." Upon remand, if the court decides to resentence defendant under subdivision (d), it must give a factual explanation supporting its finding of "separate occasions" for each count sentenced under that subdivision. An overall statement of the court's general impression of the evidence is insufficient.

If the court decides to sentence pursuant to section 667.6, subdivision (c), and impose full, separate and consecutive terms for the sex offense counts that it determines did not occur on a separate occasion, it must also provide a statement of reasons for this sentencing choice. (*People* v. *Roberson, supra,* 198 Cal.App.3d at p. 868.)

VI., VII.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The judgment of convictions is affirmed. We remand to the trial court for resentencing so the court may designate one of the offenses as the principal term; make specific factual findings on the question of whether some of the sex offenses were committed on "separate occasions" within the meaning of subdivision (d); provide a statement of reasons for any consecutive terms imposed in which the court retains sentencing discretion; impose the appropriate term for the weapon use in the false imprisonment count in accordance with this opinion; and impose one unstayed term of five years for the prior serious felony enhancement pursuant to section 667, subdivision (a).

Martin, Acting P. J., and Thaxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 12, 1996. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 1063.