Filed 8/26/14  P. v. Sanders CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073358 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08401) |
| v. | |
| LADELL LAMONT SANDERS, | |
| Defendant and Appellant. | |

A jury convicted defendant Ladell Lamont Sanders of three counts of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and three counts of forcible oral copulation (§ 288a, subd. (c)(2)) with multiple victim findings (§ 667.61, subd. (e)(4)) as to all counts.  The trial court sentenced defendant to 90 years to life.

On appeal, defendant contends there is insufficient evidence to support one of the oral copulation convictions and the trial court's finding that all of the counts involving

---

[1] Undesignated statutory references are to the Penal Code.

1

one victim were committed on separate occasions is not supported by the record. We vacate the consecutive terms on counts one through three, remand for the trial court to determine whether sentence on those terms should be consecutive pursuant to section 667.6, subdivision (c), and affirm the judgment in all other respects.

FACTS

*D.S.*

In December 2011, 18-year-old D.S. was five months' pregnant. She had been a prostitute since she was 15, but stopped seeing her regular customers after learning she was pregnant.

On December 10, 2011, at approximately 1:00 a.m., D.S. left her residence after fighting with her boyfriend and walked to a nearby bus stop to "take a break." She wanted to visit her grandmother's house, but could not get a ride there. A car pulled up to the bus stop and the driver, defendant, offered her a ride. D.S. agreed when defendant offered to take her to her home first so she could get her cell phone. She got into the car and defendant drove her to her residence, where she retrieved the phone and returned to defendant's car.

Defendant started driving, but D.S. soon realized he was not driving to her grandmother's house. She told defendant he was driving in the wrong direction, but he kept driving, even after she asked him to take her back home. When D.S. told defendant she would call the police, he grabbed her phone, took out the battery, and continued driving. D.S. panicked and moved to the backseat.

Defendant parked next to a FedEx building near a deserted warehouse. D.S. asked for her phone again; defendant threw the phone outside the car and prevented her from escaping. Defendant asked D.S. if she wanted money, which she thought would be in exchange for sex. He offered $30, but D.S. told defendant she wanted to go home and was not working as a prostitute. After she declined to have sex with him, defendant said he had a gun and threatened to use it.

2

Defendant left the car and went to the passenger door. D.S. asked him to at least use a condom, but defendant said he did not have one. He then entered the backseat, pushed her down onto the seat, and had intercourse with her. As defendant raped her, D.S. kept asking defendant why he was doing this to her, told him she was pregnant, and tried to resist him. Defendant continued raping D.S. until he ejaculated, after which he pushed her out of the car and drove off.

D.S. reassembled her phone and called 911. She later showed officers where the rape took place and positively identified a photo of defendant's car.

*L.M.*

L.M. was a 21-year-old prostitute who gave all of her earnings to her physically abusive pimp. She always received payment before engaging in the sex act. L.M. was working as a prostitute on December 13, 2011, around midnight when defendant approached her in his car asked if she needed a ride. She got into defendant's car and agreed to $40 for intercourse and oral sex.

L.M. directed defendant to a familiar location, an AM/PM on Stockton Boulevard in Sacramento. She texted her pimp that she had a customer; after finishing the text, she noticed defendant was not driving towards the AM/PM. When L.M. asked him to drive to the AM/PM, defendant told her he was driving to another spot he knew and that they would get there quickly.

Defendant drove into a deserted, industrial area, parking so close to a warehouse that L.M. could not open her door to get out. L.M. and defendant got into the backseat, where she asked defendant for the money. He refused to pay, telling L.M. he had a gun but she would not be hurt if she did everything he said. A scared L.M. pleaded with defendant not to hurt her as she had children at home.

Defendant ordered L.M., who was naked from the waist down, to pull up her shirt and bra. He put on a condom as she requested, and then demanded oral sex. Feeling she had no choice, L.M. complied. She stopped three or four times because she was afraid.

3

Each time she stopped, defendant demanded she continue performing oral sex on him and she would reinitiate the oral sex. Defendant next ordered L.M. to lay back, after which he had intercourse with her. Feeling she had no choice, L.M. complied against her will. After finishing, defendant put on his clothes and got out of the car.

L.M. grabbed her clothes and ran out of the car. She eventually flagged down a tow truck. The driver let her in the truck to clothe herself while he called 911. The police responded to the call and took her statement. She later identified defendant's car and identified defendant in a photographic lineup.

DNA from a swab taken from L.M.'s vagina after the attacks matched defendant, with a random chance of about 1 in 2 quintillion.

*J.H.*

17-year-old J.H. was working the Sacramento streets as a prostitute in November 2011. She was working on Stockton Boulevard one night when defendant approached her in his car and said he was "looking for business." After determining he was not a police officer, J.H. got into his car, whereupon they agreed to $100 for oral sex and intercourse.

Defendant drove to area around Fruitridge Road and parked in an alley by a church. J.H. asked for the money up front; defendant replied that he would pay her when he was done. When she insisted on payment first, defendant said he had a gun. J.H. expressed disbelief to defendant, who produced the gun from between the seat and door.

Shaking with fear, J.H. asked, "Do you really have to rape a prostitute?" Defendant told J.H. to get in the backseat. Feeling she had no choice, J.H. went onto the backseat, pulled up her dress, and took off her panties. Defendant did not allow her to put a condom on him. He forced J.H. to orally copulate him for around two minutes, got on top of her, and had intercourse with her until he ejaculated. Defendant left the car and told J.H. to get out of the car; as she put on her panties he slammed the car door, threw

her a dollar bill, and drove off. J.H. called her pimp, who directed her not to call the police and had her working the streets within 15 minutes.

J.H. saw defendant and his car several times in the next few weeks as she worked on the streets. One time, she recorded his car's license plate number. She also warned other prostitutes working the Stockton Boulevard area about defendant. She was contacted by an undercover detective with the Sacramento Police Department on December 14, 2011. She eventually reported the sexual assault and gave the license plate number to the detective. She later identified defendant in a photographic lineup.

DISCUSSION

I

Defendant was convicted of two counts of forcible oral copulation against L.M.[2] He contends there is sufficient evidence to support only one count. We disagree.

In determining the sufficiency of the evidence, our role is limited. Under the state and federal constitutional due process clauses, "the test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 667, original italics.)

"Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person." (§ 288a, subd. (a).) Our Supreme Court has held that " '[a]ny contact, however slight, between the mouth of one person and the sexual organ of another person constitutes oral copulation. Penetration of the mouth or sexual organ is

---

[2] Defendant was originally charged with four counts of oral copulation against L.M., but the trial court dismissed one of the counts for insufficient evidence on the People's motion during the trial. The jury convicted defendant on two of the remaining counts, and acquitted him on the third.

not required. Proof of ejaculation is not required.' " (*People v. Dement* (2011) 53 Cal.4th 1, 41, fn. omitted.)

Defendant recognizes L.M. testified that defendant's penis came out of her mouth every time she stopped performing oral sex on him. Nonetheless, he claims there is no evidence L.M.'s mouth had no contact with his penis the times she stopped, or for how long she stopped. From this, defendant concludes there is no evidence of a necessary break in contact between L.M. and defendant to establish more than one count of oral copulation.

Defendant's argument misconstrues the standard of appellate review. By far the most reasonable inference to draw from L.M.'s testimony that defendant's penis came out of her mouth is that this broke off all contact between her mouth and his penis. For us to accept defendant's contention, we would have to view the evidence in a light most favorable to the defense and thereby accept the less reasonable interpretation of the evidence. That we cannot and will not do.

Asserting that no more than an incidental break in contact could be found, albeit incorrectly, defendant additionally claims that "a brief interruption of contact should not justify breaking the otherwise continuous conduct into separate offenses." He supports this contention by referring to the crime of battery, which is completed when there is a single offensive or harmful touching. (*People v. Pinholster* (1992) 1 Cal.4th 865, 961; disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 458-459.) According to defendant, "[t]reating each time [L.M.'s] mouth touched [defendant's] penis as a separate crime would be equivalent to treating each punch in a fistfight as a separate battery because a single punch completes the crime."

This fallback position is likewise unfounded. "[T]he gravamen of the offense of oral copulation 'is the revulsion and harm suffered by one who is forced to unwillingly touch his or her mouth to the genitals of another.' [Citation.]" (*People v. Dement, supra*, 53 Cal.4th at p. 43.) By withdrawing her mouth from defendant, L.M. sought to

6

terminate the revulsion and harm he was inflicting on her by forcing her to orally copulate him. Each time defendant compelled her to reinitiate the oral copulation by threat of force, L.M. suffered additional revulsion and harm. Defendant's analogy to battery is inapt. In battery, the criminal is committing the necessary touching while in forcible oral copulation, the victim is forced to commit the touching by defendant's force or threat of force. When the victim of oral copulation ends the offense by breaking off contact with the defendant, a new crime is committed when the defendant forces the victim to orally copulate him again.

Since the evidence supports a finding that L.M. broke off contact with defendant at least once and was then forced to orally copulate him again, substantial evidence supports convicting defendant of two counts of forcible oral copulation.

II

Defendant contends the trial court's finding that the three counts involving L.M., counts one through three,[3] were committed on separate occasions and thus warranted consecutive terms (§ 667.6, subd. (d)) is not supported by the record.

Section 667.6, subdivision (d) provides in pertinent part: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually

---

[3] Defendant was originally charged with five crimes involving L.M., counts one through five. One of the counts, count three, was dismissed for insufficient evidence on the prosecutions motion at the end of trial, and the remaining counts renumbered as counts one through seven.

7

assaultive behavior.  Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

"Our Supreme Court has recently summarized case law construing the 'separate occasions' requirement of section 667.6, subdivision (d) as follows:  'Under the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location.  Thus, the Court of Appeal herein cited *People v. Irvin* (199[6]) 43 Cal.App.4th 1063, 1071, for the principle that a finding of "separate occasions" under . . . section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior:  "[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter."  Similarly, the Court of Appeal in *People v. Plaza* (1995) 41 Cal.App.4th 377, 385, affirmed the trial court's finding that sexual assaults occurred on "separate occasions" although all of the acts took place in the victim's apartment, with no break in the defendant's control over the victim.  (But see *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [defendant's change of positions between different sexual acts was insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, "especially where the change is accomplished within a matter of seconds"]; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [holding, after the respondent implicitly conceded the point, that the trial court erred in imposing consecutive sentences for different sexual acts when there was no cessation of sexually assaultive behavior "between" acts].)'  (*People v. Jones* [(2001)] 25 Cal.4th 98, 104-105.)

"Once a trial judge has found under section  667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for

8

reflection after completing an offense before resuming his assaultive behavior. [Citations.]" (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1091-1092.)

We agree with defendant that *Pena* and *Corona* are controlling here. As in *Pena*, defendant "simply did not cease his sexually assaultive behavior, and, therefore, could not have 'resumed' sexually assaultive behavior." (*People v. Pena, supra*, 7 Cal.App.4th at p. 1316.) Accordingly, "the case at bar is strongly analogous to *Corona*, in which separate sexual acts occurring one after the other were held to be committed on one 'occasion.' " (*People v. Pena, supra,* at p. 1316.) The fact that defendant forced L.M. to change positions is not dispositive. "[A] change in positions, alone, is insufficient to provide a perpetrator with a reasonable opportunity to reflect upon his actions, especially where the change is accomplished within a matter of seconds." (*Ibid.*) Where, as here, "there was no cessation of sexually assaultive behavior . . . , the trial court erred in imposing sentence for those offenses under [] section 667.6, subdivision (d)." (*People v. Corona*, *supra*, 206 Cal.App.3d at p. 18.)

Since counts one through three were committed against L.M. on the same occasion, the court in its discretion could impose full-term consecutive sentences under section 667.6, subdivision (c).[4] However, the court did not indicate it was exercising its discretion in sentencing defendant to consecutive terms on those counts. In invoking its

---

[4]     667.6, subdivision (c) states: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison."

discretion during sentencing, the court must indicate it is making a discretionary choice and provide and explain its reasoning.  (*People v. Belmontes* (1983) 34 Cal.3d 335, 347.)  Therefore, we remand to the trial court to determine whether, in its discretion, full-term consecutive sentences were warranted under section 667.6, subdivision (c).

## DISPOSITION

The sentences on counts one, two, and three are vacated and the matter is remanded to the trial court to consider its discretion to impose consecutive sentences on those counts pursuant to section 667.6, subdivision (c).  In all other respects, the judgment is affirmed.


          NICHOLSON     , J.


We concur:


      RAYE        , P. J.


      ROBIE       , J.