Filed 5/27/26  P. v. Rodriguez CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> IVAN RODRIGUEZ, <br><br>     Defendant and Appellant. | A172863 <br><br> (Solano County <br> Super. Ct. No. <br> VCR239136) |

Ivan Rodriguez appeals from a final judgment of conviction and a sentence that included seven consecutive terms of 15 years to life based on seven counts of aggravated sexual assault of a child.  Defendant contends there was insufficient evidence to establish that the two counts of aggravated sexual assault of a child based on sexual penetration took place within the Solano County Superior Court's jurisdiction in Vallejo, California, rather than in Mexico.  As to the aggravated sexual assault of a child counts based on oral copulation, sexual penetration and rape, he argues there was insufficient evidence that the underlying acts occurred on separate occasions, as required for the imposition of

1

consecutive sentences under Penal Code[1] section 667.6, subdivision (d). We agree that there is insufficient evidence to establish that one of the charged counts of aggravated sexual assault of a child based on sexual penetration took place in Vallejo, but we reject the argument that consecutive sentences were improper under section 667.6, subdivision (d). Accordingly, we reverse the conviction on count 8 for insufficient evidence and otherwise affirm.

## BACKGROUND

### *Charges*

On May 16, 2023, Ivan Rodriguez was charged with the following 14 felony offenses: corporal injury on spouse on December 31, 2021 (Pen. Code, § 273.5 (count 1)); committing a lewd act upon a child under the age of 14 on December 31, 2021 (§ 288, subd. (a) (count 2)); evading an officer on December 31, 2021 (Vehicle Code, § 2800.4 (count 3)); three counts of aggravated sexual assault of a child, by rape, between November 1, 2019, and December 31, 2021 (§ 269, subd. (a)(1) (counts 4, 5 & 6)); two counts of aggravated sexual assault of a child, by sexual penetration, between November 1, 2019, and December 31, 2021 (§ 269, subd. (a)(5) (counts 7 & 8)); two counts of aggravated sexual assault of a child, by forcible oral copulation, between November 1, 2019, and December 31, 2021 (§ 269, subd. (a)(4) (counts 9 & 10)); child abuse or endangerment between September 1, 2021, and December 31, 2021 (§ 273a, subd. (a)

---

[1] All further statutory references are to the Penal Code except as otherwise indicated.

2

(count 11)); inducing a minor to use marijuana between September 1, 2021, and December 31, 2021 (Health & Saf. Code, § 11361, subd. (a) (count 12)); and two counts of committing a lewd act upon a child between November 1, 2019, and December 31, 2021 (§ 288, subd. (a) (counts 13 & 14)).

Defendant pleaded not guilty to all counts, and a jury trial began on January 8, 2025.

### *Testimony*

Elizabeth G. and defendant share a daughter, F.C., who was born in 2008.  They had a second daughter together approximately six years later, and they all lived together in Mexico until approximately 2015.  During Elizabeth G.'s and defendant's relationship, defendant left Mexico for the United States to look for work.  After defendant moved to the United States, he returned to Mexico several times to visit Elizabeth G. and their children.  Elizabeth G. and defendant separated in 2018, but Elizabeth G. and her daughters visited defendant twice in the United States after the separation.

F.C. was 16 years old at the time of trial.  She testified that she was five years old when defendant first hit her, and that he hit her more than 10 times, striking her with a belt or cable, slapping her, and pulling her ears.  F.C. also witnessed defendant hit her mother.  When asked if she felt scared for her mother, F.C. answered that she did "[b]ecause [F.C.] knew he did not know how to control himself and, perhaps, in one of the blows [her mother] could not stand that or even die or something else."

3

During their first visit to defendant in December 2019, Elizabeth G. and her daughters traveled from Mexico and stayed with defendant at his apartment in Vallejo, California, for about one week. At this time, F.C. was 11 years old. On December 24, 2019, defendant touched F.C. sexually for the first time. F.C.'s younger sister was sleeping in a bedroom in defendant's apartment while F.C., her mother, and defendant were lying on blankets on the living room floor. Defendant was between F.C. and her mother. While F.C's mother slept, defendant started touching F.C.'s "back buttocks" with his hands and began kissing her lips and neck. Defendant ordered F.C. to remove her clothes. Defendant told her to remove the top half of her pajamas, saying to her, "nothing was going to happen; . . . this was something normal between some fathers and daughters." F.C. told defendant that she did not like what was happening and "did not want to do it." Defendant replied that he did not care. Defendant put his hands beneath F.C.'s remaining clothing to touch her bare bottom and vagina with his hand. Defendant then removed the rest of F.C.'s clothing and inserted his penis into her vagina, moving his body "back and forth." Defendant continued until F.C.'s mother began moving around in her sleep.

Following this visit to Vallejo in December 2019, F.C., her mother, and her sister returned to Mexico. At some point after this trip, F.C. took several unknown pills in an attempt to end her life. When asked why she wanted to do this, F.C. testified, "Because every time I would see [defendant] or every time he

4

would visit us he would look for whatever reason to hit me, and also because he was sexually abusing me."

When F.C. was 12 years old, defendant moved back to Mexico and lived with Elizabeth G. and his daughters. He continued touching F.C. sexually during this period, typically while the other family members were asleep. F.C. testified that "[w]hat happened in December would happen again several times." Defendant threatened F.C. by telling her that "he had . . . many friends that could harm [F.C. and her family]," and he warned her not to complain, make any noise, or tell anyone what he was doing to her.

After living together in Mexico for about a year, F.C., her mother, her sister, and defendant moved to Vallejo, California together. Defendant continued to touch F.C. sexually after the family moved to the United States. On one occasion around Thanksgiving in 2021, defendant grabbed F.C. by the hand and pulled her into the bedroom while they were in their apartment alone together. He told her to lay on the bed and pull her pants and underwear down. Defendant then put on a condom and inserted his penis into F.C.'s vagina. Defendant stopped after a short period because he was interrupted by a phone call from Elizabeth G.

On the night of December 23, 2021, defendant and F.C. were alone together in the living room of defendant's apartment, with Elizabeth G. and F.C.'s sister in a closed bedroom nearby. Defendant woke F.C. up very early in the morning on December 24th and, after F.C. initially protested, threatened to "do

5

something" to F.C.'s mother if F.C. refused him sexually. Defendant again told F.C. to remove her clothes and underwear. He began touching her vagina and bottom with his hands. He removed his pants, put on a condom, and applied lubricant to his penis. Defendant then inserted his penis into F.C.'s vagina. Defendant eventually stopped penetrating F.C., told her to get dressed, to stay quiet, and told her not to tell anyone what happened.

Later that day on December 24, 2021, F.C., her sister, and mother were at the apartment with defendant. Defendant pulled F.C. into the bathroom with him, closed the door, and ordered F.C. to pull down her pants. He removed his pants and began touching F.C.'s vagina, buttocks, and legs with his hands and penis. Defendant then put on a condom, inserted his penis into her vagina, and moved his body "back and forth." Defendant eventually stopped, pulled his pants up, and told F.C. to get dressed.

In addition to these accounts of abuse that occurred on specific dates, F.C. testified about several other instances of defendant's abusive behavior towards her. F.C. testified that defendant put his penis in her vagina "many" other times and that it was hard for her to count how many. During the time that F.C. was living with defendant in Vallejo, he also touched her body with his mouth on several occasions. She testified that "[e]ach time he would touch [her] sexually," defendant would put his mouth on her vagina. He would also put his mouth on her neck, legs, chest, and bottom. The prosecutor asked F.C. if this

6

took place at defendant's apartment in Vallejo, and she responded in the affirmative, "Yes."

F.C. also relayed that defendant would pass his fingers over her vagina and then insert his fingers into her vagina. She testified that defendant did that more than 10 times. The prosecutor asked F.C. if this also occurred at defendant's apartment in Vallejo, and she answered, "Yes."

Additionally, defendant would make F.C. put her mouth on his penis while they lived together in Vallejo. F.C. remembered previously telling an interviewer at a child advocacy center that this happened "less than 10 times." When asked where in the apartment this took place, F.C. answered, "In the bathroom, the living room, and sometimes the bedroom." Further, during the time the family was living in Vallejo, defendant also hit F.C. with his hands or a leather belt. On several occasions, defendant left marks on F.C.'s body from beating her.

The final incident of defendant's sexual abuse of F.C. occurred on December 31, 2021, at the apartment in Vallejo. While F.C.'s mother and sister were sleeping, defendant woke F.C. up and pulled her into the bathroom with him. Once he closed the bathroom door, defendant shoved F.C. against the wall and started to undress her. He was kissing F.C.'s chest, neck, and face when her mother walked into the bathroom. Defendant backed away from F.C. and pushed her to the side. Elizabeth G. asked what was going on and why the door was closed. Defendant replied that "he was just checking on [F.C.] because something had happened to [her] nose." Defendant exited the

7

bathroom and Elizabeth G. continued questioning him, asserting that she saw "something else" and that "something was happening to [F.C.]." Defendant yelled insults back at Elizabeth G. and started to physically attack her, hitting her repeatedly. F.C. intervened, pulling defendant aside in the kitchen and assuring him that she would not say anything to her mother. Then, Elizabeth G. went into the bedroom of the apartment and F.C. followed her inside. Defendant exited the apartment with his keys and jacket.

Shortly afterwards, defendant re-entered the apartment, attempting to speak with Elizabeth G. again. Elizabeth G. tried to remain calm, picked up her car keys, and left the apartment with her two daughters. While they were at a park, hiding from defendant, F.C. spoke to her mother in more detail about what defendant had been doing to her. Elizabeth G. then called the police and took her daughters to the Vallejo police station. Elizabeth G. reported to Vallejo Police Officer Elias Diaz that defendant had been physically abusing her and sexually abusing their daughter, F.C. Officer Diaz alerted other officers that defendant was wanted for domestic violence and sexual assault. Later that evening, while patrolling in their marked police vehicle, two other officers observed the vehicle known to be associated with defendant. They activated their overhead emergency lights and sounded the siren to initiate an investigative stop of defendant's vehicle. However, defendant did not stop driving. The officers initiated a pursuit of defendant's vehicle, which ultimately ended with the officers performing an

8

"intervention technique" while defendant was moving at a slower speed and detaining him at gunpoint.

*Verdict*

On January 24, 2025, the jury found defendant guilty on all counts except count 12 (inducing a minor to use marijuana).

*Sentencing*

On March 17, 2025, the court sentenced defendant to seven consecutive indeterminate terms of 15 years to life on counts 4 through 10, totaling an indeterminate term of 105 years to life. The court also imposed a total determinate term of 13 years, to run consecutively to the indeterminate term, on counts 1 through 3, 11, 13, and 14.[2]

## DISCUSSION

### I. Standard of Review

Defendant first argues there was insufficient evidence that the two counts of aggravated sexual assault of a child by sexual penetration (counts 7 & 8) occurred in Vallejo, California, as opposed to Mexico.  When considering a challenge to the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment and determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.)  A reviewing court "presumes in support of the judgment

---

[2] Defendant does not challenge the convictions or sentences for these counts, so we do not discuss them further.

the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

Defendant also asserts there was insufficient evidence that the aggravated sexual assault of a child counts based on oral copulation (counts 9 & 10), sexual penetration (counts 7 & 8), and rape (counts 4, 5 & 6) occurred on separate occasions, as required for the court to impose mandatory consecutive 15-year-to-life sentences under section 667.6, subdivision (d). When a trial court finds "that a defendant committed offenses on separate occasions, [we] may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior."[3] (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

## II. Sufficiency of the Evidence That Counts 7 and 8 Took Place in Vallejo, California

Defendant was charged with two counts of aggravated sexual assault of a child by sexual penetration, between November 1, 2019, and December 31, 2021 (counts 7 & 8). During trial, the prosecutor explained that counts 7 and 8 were based on defendant's acts of digitally penetrating F.C. Defendant argues there is insufficient evidence that both counts occurred

---

[3] Defendant also argues that the trial court failed to make an express finding under section 667.6, subdivision (d) and failed to explain why it believed consecutive sentences were mandatory. This claim, however, is forfeited, as "claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

within the trial court's jurisdiction in Vallejo, California, as opposed to Mexico.

F.C. testified that defendant put his fingers inside her vagina more than 10 times. When asked, "Did this also happen at the apartment in Vallejo?" she replied, "Yes," but did not offer any further information specifying how many of those instances occurred in the apartment in Vallejo, as opposed to in Mexico. F.C.'s testimony thus establishes that at least one act of sexual penetration occurred in Vallejo, but it does not constitute substantial evidence from which a reasonable trier of fact could find the defendant guilty of at least two acts of sexual penetration within the trial court's jurisdiction. F.C.'s brief testimony on this point is insufficient to support count 8.

Defendant argues that F.C.'s testimony is sufficient to sustain two separate counts of aggravated sexual assault based on sexual penetration under *People v. Jones* (1990) 51 Cal.3d 294, 315–316, which permits convictions based on a child victim's "generic" testimony regarding repeated acts of molestation where the child describes the kind of acts committed with sufficient specificity, the number of acts with sufficient certainty to support the charged counts, and the general time period during which the acts occurred. Defendant asserts that F.C.'s description of defendant penetrating her with his fingers, her estimation that it occurred more than 10 times, and her testimony that this "also happen[ed]" in the apartment in Vallejo provided substantial evidence under *Jones* for F.C.'s generic testimony to sustain two

11

separate counts of aggravated sexual assault of a child by sexual penetration.

We are unpersuaded. *Jones* did not affirm convictions based on generic testimony where the defendant argued that some of the acts of molestation took place outside the court's jurisdiction. Here, F.C.'s testimony that digital penetration "also" happened at the apartment in Vallejo does not describe the number of acts that took place in Vallejo with sufficient certainty. The frequency of the act is not specified, and F.C. did not provide enough information for a reasonable trier of fact to conclude that any more than one instance of digital penetration took place at the apartment in Vallejo.

Accordingly, the conviction on count 8 must be reversed.

## III. Sufficiency of the Evidence Supporting Consecutive Sentences on Counts 4, 5, 6, 7, 9, and 10

Defendant argues there was insufficient evidence that the aggravated sexual assault of a child counts based on three instances of rape (counts 4, 5 & 6), two instances of digital sexual penetration (counts 7 & 8), and two instances of oral copulation (counts 9 & 10) all occurred on separate occasions, as required for the imposition of mandatory consecutive 15-year-to-life sentences under section 667.6, subdivision (d). Because we have already determined that the conviction on count 8 must be reversed due to insufficient evidence, we focus only on the sufficiency of the evidence to support consecutive sentences on counts 4, 5, 6, 7, 9, and 10.

12

### A. Statutory Framework

Section 667.6, subdivision (d)(1) states that "[a] full, separate, and consecutive term shall be imposed" for each violation of certain sex offenses if the crimes involve the same victim on "separate occasions." To determine whether several sex offenses against a single victim were committed on separate occasions, subdivision (d)(2) provides that the trial court must consider whether "the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior." (*Id.*, subd. (d)(2).) This determination cannot rest solely on the defendant losing or abandoning the opportunity to attack, nor upon the duration of time between offenses. (*Ibid.*)

### B. Sufficiency of the Evidence Supporting Count 7 as a Separate Occasion from Counts 4, 5, and 6

In reviewing the trial court's determination that defendant's act of digitally penetrating F.C., as described in count 7, occurred on a separate occasion from the acts of rape underlying counts 4, 5, and 6, we turn to F.C.'s testimony regarding defendant's actions. The prosecutor asked F.C., "Which of your body parts would [defendant] touch with his fingers?" She responded, "My private parts." When F.C. was asked to describe the touching in more detail, she stated that defendant would "pass over" her vagina with his fingers before "sometimes" inserting them into her vagina and moving them back and forth inside her. As noted previously, F.C. testified that

13

defendant sexually penetrated her with his fingers more than 10 times. After these descriptions of sexual penetration, F.C. stated that there were times that defendant would touch her butt and vagina before proceeding to raping her and more than 10 "other times where [defendant] would touch [her] vagina with his hand and it would not lead to him making [her] have sex[.]" F.C.'s testimony thus provided substantial evidence that defendant sexually penetrated her with his fingers several times independent of and in addition to the three rapes covered by counts 4, 5, and 6. A reasonable factfinder could infer from this evidence that defendant's act of sexual penetration as alleged in count 7 occurred on a separate occasion from the rapes underlying counts 4, 5, and 6.

### C. Sufficiency of the Evidence Supporting Counts 9 and 10 as Separate Occasions from Counts 4, 5, and 6

Defendant also argues there was insufficient evidence that the acts of oral copulation (as alleged in counts 9 & 10) occurred on separate occasions from the acts of rape (as alleged in counts 4, 5 & 6). Again, F.C.'s testimony refutes this contention.

The prosecutor explained in the closing argument that counts 9 and 10 were based on defendant forcing F.C. to orally copulate him. F.C. did not specify when defendant's acts of forcing F.C. to orally copulate him occurred in relation to the acts of rape. She did, however, testify that defendant always wore a condom, and sometimes used lubricant, when he raped her. She testified to three specific incidents of defendant putting on a

14

condom before inserting his penis into her vagina. First, F.C. testified that when defendant raped her around Thanksgiving 2021, defendant put on a condom his penis before inserting it into her vagina (count 6). Next, on December 23, 2021, when defendant ordered F.C. onto the living room floor in the middle of the night, defendant put on a condom his penis and applied lubricant before inserting it into F.C.'s vagina (count 5). Finally, when defendant called F.C. into the bathroom of the Vallejo apartment on December 24, 2021, he put on a condom before inserting his penis into F.C.'s vagina (count 4). Therefore, F.C.'s testimony establishes that defendant paused to put on a condom (and sometimes lubricant) before raping F.C. on every occasion for which he was convicted of aggravated sexual assault of a child by rape (counts 4, 5 & 6).

As to counts 9 and 10, F.C. testified that when defendant would make her orally copulate him, he would have her "kneel down" by pushing down on her shoulders with his hands. Then he would tell her to put her mouth on his penis, grab the back part of her head, and move F.C.'s head back and forth by pulling her hair.

The question is thus whether defendant pausing to put on a condom and changing physical positions provided sufficient opportunity for reflection such that the acts of oral copulation occurred on separate occasions from the rapes under section 667.6, subdivision (d). "[A] finding of 'separate occasions' under Penal Code section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior: '[A] forcible

15

violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.' " (*People v. Jones* (2001) 25 Cal.4th 98, 104.) A trial court may find that a defendant had a reasonable opportunity to reflect upon his or her actions, even if the parties never change physical locations. (*People v. Irvin* (1996) 43 Cal.App.4th 1063, 1071 (*Irvin*).) Additionally, it is not necessary for there to be any break in a defendant's control over the victim for a trial court to find that a series of sexual acts occurred on separate occasions. (*People v. Plaza* (1995) 41 Cal.App.4th 377, 385.)

In *People v. King* (2010) 183 Cal.App.4th 1281, 1325–1326 (*King*), the defendant's momentary distraction by the headlights of a passing car was sufficient to find that he had the opportunity to reflect prior to the next sexual assault. There, the entire assault, including the pause, lasted less than two minutes. (*Id.* at p. 1290.) The victim estimated that defendant's fingers were inside of her for about 30 to 45 seconds before the lights passed by, and then an additional 25 to 30 seconds after he reinserted them, for a total of about " 'a minute, a minute and a half.' " (*Ibid.*) The pause between these two assaults was therefore mere seconds. The trial court observed that the defendant "could have stopped" at the point when he saw the passing lights and removed his finger and found that this momentary cessation in assaultive behavior gave the defendant the opportunity to reflect upon his actions. (*Id.* at p. 1325.) Finding no error, the reviewing court affirmed the trial court's determination that

16

" 'that this qualifies for a separate full consecutive term.' " (*Id.* at p. 1325.)

Here, a reasonable factfinder could determine that defendant paused between making F.C. orally copulate him and raping her to put on a condom and/or lubricant. The act of putting on a condom provided a sufficient pause in defendant's assaultive behavior to support mandatory consecutive sentencing under section 667, subdivision (d). (*King, supra,* 183 Cal.App.4th at p. 1325.) The trial court could reasonably conclude that the time defendant took to withdraw his penis from F.C.'s mouth, obtain a condom, unwrap it, and place it on his penis before committing the rapes in counts 4, 5, and 6 provided a pause and opportunity to reflect similar to *King*.

In addition, a reasonable trier of fact could find that defendant had a sufficient opportunity to reflect when he repositioned himself and F.C. between making her orally copulate him and raping her. In *Irvin*, the reviewing court stated that "a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her actions' even though the parties never changed physical locations and the parties 'merely' changed positions." (*Irvin, supra*, 43 Cal.App.4th at p. 1071.) Here, F.C. testified that when defendant made her orally copulate him, he made her "kneel down." This position differs significantly from the positions during each of the three counts of aggravated sexual assault of a child by rape. Before the rape that took place around Thanksgiving 2021 (count 6), defendant made F.C. lie down on the bed, placing his hands on her waist to

17

position her facing upwards. When defendant raped F.C. on the living room floor on the night of December 23, 2021 (count 5), he made F.C. lie down on her stomach and then pulled her waist upwards so she was bending over in front of him. Lastly, before defendant raped F.C. in the bathroom on December 24, 2021 (count 4), he grabbed F.C. by her waist, turned her around, and shoved her against the door. In each of these instances, defendant would have needed to withdraw his body from F.C. and completely reposition her, whether he forced her to orally copulate him before or after the act of rape. The change of positions that necessarily took place between defendant making F.C. orally copulate him while kneeling and the three acts of rape supports a finding of separate occasions under *Irvin, supra,* 43 Cal.App.4th at p. 1071.

### D. Sufficiency of the Evidence Supporting Count 7 as a Separate Occasion from Counts 9 and 10

Defendant finally argues that F.C.'s testimony did not establish that his act of sexual digital penetration (as alleged in count 7) occurred on a separate occasion from the acts of oral copulation (as alleged in counts 9 & 10). As noted previously, F.C. testified that when defendant would make her orally copulate him, he would have her "kneel down" by pushing down on her shoulders with his hands. Then he would tell her to put her mouth on his penis, push her head, and grab hold of the back part of her head. Defendant would then move F.C.'s head back and forth by pulling her hair.

18

Given this testimony, it follows logically that defendant would need to physically reposition F.C. from her kneeling position if he were to sexually penetrate her using his hand either before or after the acts of forced oral copulation. Accordingly, a reasonable trier of fact could conclude that defendant had a reasonable opportunity for reflection between making F.C. orally copulate him on her knees and sexually penetrating her with his fingers. (*Irvin, supra,* 43 Cal.App.4th at p. 1071 [change of positioning between sexual acts can constitute sufficient opportunity for reflection under section 667.6, subdivision (d)].)

## DISPOSITION

The conviction on count 8 is reversed, and the sentence as to that count is vacated. The trial court is directed to prepare an amended abstract of judgment consistent with this disposition and transmit a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


BROWN, P. J.


WE CONCUR:

STREETER, J.
SWEET, J.*                               *People v. Rodriguez* (A172863)

---

\* Judge of the Superior Court of Marin County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19