Filed 3/15/21  P. v. Viveros CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOEL VIVEROS,<br><br>    Defendant and Appellant. | F078003<br><br>(Super. Ct. No. F16904603)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Appellant and Respondent.

-ooOoo-

Appellant Joel Viveros was convicted following a jury trial of forcible rape (Pen. Code,[1] § 261, subd. (a)(2); count 1) with a one-strike kidnapping circumstance (§ 667.61,

---

[1]    All further undesignated statutory references are to the Penal Code.

subd. (d)(2)) and forcible oral copulation (§ 288a, subd. (c)(2)(A); count 2) with a one-strike kidnapping circumstance (§ 667.61, subd. (d)(2)). Appellant was sentenced to two consecutive terms of 25 years to life (one for each count) for a total of 50 years to life.

On appeal, appellant contends: (1) the evidence was insufficient to support the kidnapping circumstances; (2) the court's instruction to the jury on the kidnapping circumstance was impermissibly ambiguous (CALCRIM No. 3175); (3) the court erred by sentencing appellant to consecutive terms (§ 667.6, subd. (d)); (4) the court's order prohibiting visitation with the victim was unauthorized; (5) the sentencing minute order must be corrected to reflect the termination of a pretrial criminal protective order; and (6) the abstract of judgment must be corrected to reflect the court's oral pronouncement of appellant's sentence. Respondent concedes error with regard to appellant's latter three arguments. We accept respondent's concessions but otherwise affirm the judgment.

## FACTS

On July 31, 2009, around 10:30 p.m., Kimberly G. left a party to meet her boyfriend at her mother's house a few blocks away. Kimberly took the long way to her mother's house, staying on "a busy street" rather than cutting through a nearby school with no lights or walking through a neighborhood. While she was walking on the sidewalk, a stranger came up behind her and started talking to her, asking her where she was going and if she lived in the neighborhood. Kimberly felt scared, so she tried to ignore him and began to walk faster. After a couple of minutes of trying to talk to Kimberly, the stranger punched Kimberly in the face more than once, causing her to fall to the ground. The lighting in the area where the perpetrator punched Kimberly was "dim," but she could see where she was. There was a park across the street with lights on the street around it. After the perpetrator punched Kimberly, he dragged her by her arms about 10 to 15 feet across a grass area to some bushes by a building where it was "really dark." While dragging her, the perpetrator told Kimberly he had a knife, and that if she screamed, he would kill her. Kimberly testified the perpetrator dragged her to a space

2.

between the bushes and the wall of the building where it met a chain-link fence, and that the bushes possibly could have concealed her if they were longer.

The perpetrator then told Kimberly to perform oral sex on him, and she heard him unbuckling his belt. She complied. She told the police officer who was later dispatched that she had initially refused, but the perpetrator tried to force his penis into her mouth and was able to put his penis in her mouth about 10 times. While the perpetrator was forcing Kimberly to orally copulate him, he told her to close her eyes and not look at him, and he continued to threaten to kill her and her family. Kimberly told the reporting officer the perpetrator became angry when she would not perform oral sex on him, so he punched her again, and she fell to the ground. At that point, the perpetrator then removed Kimberly's underwear and shorts, got on top of her, and penetrated her vagina with his penis 10 to 15 times while calling her names. Afterward, the perpetrator told Kimberly to keep her eyes closed, count to 10, and if she told anyone what happened, he would find her and kill her. Kimberly estimated the entire sexual assault lasted less than five minutes, but "seemed like forever." During the assault, there were vehicles driving by, but the headlights were not pointing towards her, and she was not close enough to yell toward them for help.

Kimberly ran to the closest busy street and got the attention of a man on a bicycle who then walked her to a nearby hospital. When they got there, they waved down a police car in the parking lot. Kimberly told an officer that she was covered in bushes while being raped, and the bushes were surrounding her body.

Kimberly underwent a sexual assault exam. The nurse who performed Kimberly's exam observed Kimberly's left jaw was swollen, and she had a loose tooth and black and blue lip. Kimberly also had several abrasions to her hand and thigh. Kimberly told the nurse she experienced pain during her vaginal exam. The nurse collected swabs from various parts of Kimberly's body, as well as suspected semen from her vagina.

3.

A crime scene technician photographed the scene. Kimberly's broken glasses were found in the grass, and one of her sandals, her panties and shorts were found near the wall and bushes of the nearby building. The crime scene technician estimated it was approximately 30 feet from the sidewalk to the wall of the nearby building.

In 2016, a Combined DNA Index System (CODIS) "hit" revealed appellant as a DNA match to the perpetrator. A search warrant was issued for the collection of appellant's DNA, and further analysis confirmed the match.

Appellant agreed to be interviewed by the police at the time the search warrant was being executed; the interview was recorded and a video of his interview was played for the jury.

During his interview, appellant initially stated he did not remember committing the crimes, noting he was "heavily on drugs" in 2009. Eventually, he stated he did remember approaching Kimberly and that she may have said something to make him angry causing him to push her. He recalled taking her "off to the side of somewhere"; he said he "drug her back" by some bushes by a building and sexually assaulted her. He recalled her trying to fight him off. He said he took her clothes off. He did not recall asking her to perform oral sex but it was possible that he did. Appellant said he remembered feeling like he did something wrong in the few days that followed. He remembered hearing "somewhere down the line that somethin' similar to that happened in that area" and hoped it was not him. Appellant said Kimberly "did not deserve that. And I'm sure that ruined her life." He said, "the reason I'm admitting to this after so long is because it's somethin' that's kinda (been on) to me all my life … since that day."

Appellant testified in his own defense that he felt he was pressured into confessing in his interview. He admitted he had an "encounter" with Kimberly, but he did not recall the nature of it because of short-term memory problems due to past head trauma. He testified the detectives gave him the details of the assault he mentioned in his interview before the recording started.

## DISCUSSION

### I.     Sufficiency of the Evidence—One-Strike Kidnapping Circumstances

Appellant contends the evidence was insufficient to support the one-strike kidnapping circumstances (§ 667.61, subd. (d)(2)), specifically the jury's findings Kimberly was moved a "substantial distance" and that the distance "substantially increase[d]" the risk of harm to Kimberly.  We disagree.

In assessing a claim of insufficiency of the evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  Reversal on insufficiency of the evidence is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Section 667.61, subdivision (d)(2) permits the imposition of an indeterminate 25-years-to-life sentence on a person who is convicted of specified sexual offenses (rape and forcible oral copulation are both specified) when two elements are satisfied:  (1) the victim is kidnapped; and (2) the victim's movement "substantially increased the risk of harm to the victim over and above that level of risk inherent in the underlying offense." (§ 667.61, subd. (d)(2); *People v. Adams* (2018) 28 Cal.App.5th 170, 189.)

The first element, simple kidnapping, "requires the People to prove (1) the victim was moved a substantial distance, (2) the movement was accomplished by use of physical force or fear, and (3) the movement was nonconsensual."  (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1129–1130.)  A substantial distance must be more than trivial or slight.  (*People v. Martinez* (1999) 20 Cal.4th 225, 237.)  The measured distance of the movement, while relevant, is not dispositive.  (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).)

5.

In determining the second element, whether the movement increased the risk of harm to the victim, the jury could consider whether there is substantial asportation of the victim as well as "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Dominguez*, *supra*, 39 Cal.4th at p. 1152; see *People v. Kelly*, *supra*, 245 Cal.App.4th at p. 1130.) The increased risk may be of either physical or psychological harm. (*People v. Nguyen* (2000) 22 Cal.4th 872, 885–886.)

In this case, because of the overlap of the evidence supporting both findings challenged by appellant, we will address both claims together. (See *Dominguez*, *supra*, 39 Cal.4th at p. 1152 ["[W]hether the victim's forced movement was merely incidental to the rape is necessarily connected to whether it substantially increased the risk to the victim. 'These two aspects are not mutually exclusive, but interrelated.' "].)

Here, keeping in mind the substantial evidence standard where we must draw all reasonable inferences in favor of the judgment, we conclude there was substantial evidence from which the jury could infer the movement of Kimberly was both substantial within the meaning of the statute and that it substantially increased the risk of harm to her.

The California Supreme Court has explained in the context of kidnapping to commit rape:[2] Movement "must be considered in context, including the nature of the

---

[2]    The crime of kidnapping to commit rape at the time of *Dominguez*, the defendant's conviction is analogous to the one-strike kidnapping circumstance we address here. (See *People v. Perkins* (2016) 5 Cal.App.5th 454, 467–469 (*Perkins*).) The jury in *Dominguez* was instructed that to find the defendant had committed "kidnapping for rape," it "must find defendant kidnapped the victim with the specific intent to rape her and that '[k]idnapping is the unlawful movement by physical force of a person without that person's consent for a *substantial distance* where the movement is not merely incidental to the commission of the rape and where the movement *substantially increases the risk of*

6.

crime and its environment.  In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient."  (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.)  To illustrate this concept, the court gave the following relevant examples:

> "For example, moving robbery victims between six and 30 feet within their home or apartment … may be viewed as merely incidental to the commission of the robbery and thus insufficient to satisfy the asportation requirement of aggravated kidnapping.  Yet, dragging a store clerk nine feet from the front counter of a store to a small back room for the purpose of raping her … might, under the circumstances, substantially increase the risk of harm to the victim and thus satisfy the asportation requirement."  (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.)

In *Dominguez*, the defendant moved a rape victim, at night, 25 feet from a public road, down an embankment and into an orchard that was 10 to 12 feet below the level of a road, which "tended to obscure [the] defendant's crime from any onlookers."  (*Dominguez*, *supra*, 39 Cal.4th at p. 1153.)  "The movement thus changed the victim's environment from a relatively open area alongside the road to a place significantly more secluded, substantially decreasing the possibility of detection, escape or rescue."  (*Ibid*.)  The court concluded this movement could not be said to have been merely incidental to the rape.  (*Id*. at p. 1154.)  Furthermore, the evidence suggested the forced movement removed the victim from public view, and the court therefore concluded the movement substantially increased the risk of harm.  (*Ibid*.; see *People v. Hoard* (2002) 103 Cal.App.4th 599, 607 ["[A] rape victim is certainly more at risk when concealed from public view and therefore more vulnerable to attack."].)

Appellant contends his case is distinguishable from *Dominguez* and other cases where the asportation element was met when a victim was moved from a location in public view to a location concealed from public view (e.g. *People v. Diaz* (2000)

_____

harm to the person over and above that necessarily present in the crime of rape itself.' "  (*Dominguez*, *supra*, 39 Cal.4th at p. 1151, fn. omitted, italics added.)

78 Cal.App.4th 243, 248). Appellant argues that from the area where the sexual assault took place, Kimberly and appellant would still have been visible to motorists and pedestrians. He notes the crime scene photos show sparse shrubbery that did not block the view of the chain-link fence or the wall where the crimes took place. We disagree with appellant's assessment of the evidence.

The sexual assault in the present case took place on the side of a building located on an intersection, and when viewing the scene of the sexual assault from the street on which Kimberly was walking, we acknowledge appellant's point that it does not appear the bushes would have completely covered Kimberly. However, the jury also could reasonably consider the assault took place at approximately 10:30 at night, and that Kimberly described the sidewalk as dimly lit and the area in the bushes as "really dark" and far away enough from the street that she could not yell for help. The jury could infer that though the bushes may not have completely covered Kimberly from view on the street facing the area of the sexual assault, they would have significantly camouflaged her from auto and pedestrian traffic on this street.

In addition to the above, one of the photographs of the scene was taken from across the street, facing the front of the building where the assault took place. This photograph shows that while the sidewalk where appellant initially approached Kimberly can be seen from the street that the front of the building faced, the area where the sexual assault took place is completely concealed by the bushes from motorists passing on this street and pedestrians walking toward the building. This was a busier street, according to Kimberly, and the street where it was relatively easy to flag down the man on the bike moments after the sexual assault.

Thus, it can be reasonably inferred the movement of Kimberly from the sidewalk to the bushes significantly camouflaged her from the viewpoint of one of the streets, and completely concealed her from the viewpoint of the other, busier street. The inferences drawn from the photographs, along with Kimberly's testimony, are the movement

8.

significantly decreased the likelihood of detection, giving appellant more opportunity to prolong the crimes, and therefore increased the risk of harm of physical and psychological harm to Kimberly.[3]

Like *Dominguez*, the movement "changed the victim's environment" and "substantially decreas[ed] the possibility of detection, escape, or rescue." (*Dominguez*, *supra*, 39 Cal.4th at p. 1153.) Accordingly, the same facts and inferences support the jury's finding that the movement, though not a great distance, was "substantial." To support appellant's argument that movement 10 to 30 feet cannot support a finding of "substantial distance," he cites *Perkins*, *supra*, 5 Cal.App.5th at page 464, where the appellate court found evidence the defendant forced the victim to move 10 to 30 feet inside a small private residence from one room to another was not sufficient to support a finding of "substantial distance." (*Id*. at p. 470.) The *Perkins* court noted "[n]o evidence indicates the movement increased the risk of harm to the victim" or "decreased the likelihood of detection." (*Ibid*.) *Perkins* is distinguishable for the reasons already stated, that the movement in the present case did substantially increase risk of harm to Kimberly and did decrease the likelihood of detection. Unlike in *Perkins*, the movement here took Kimberly from a location in public view to a location that was significantly concealed from public view.

Sufficient evidence supports the section 667.61, subdivision (d)(2) true findings.

## II. Alleged Instructional Error

The trial court instructed the jury, with no objection from the defense, that one of the elements of the kidnapping circumstances the People were charged with proving was

---

[3] Interestingly, appellant's defense was that he had a consensual sexual encounter with Kimberly next to the building in the bushes. Appellant's version of events raises the question of why they would move from the sidewalk to the side of the building. The most reasonable conclusion is that they did so to conceal themselves from public view.

"the defendant moved Kimberly G. or made her move a substantial distance."
(CALCRIM No. 3175.)

Appellant argues the instruction was impermissibly ambiguous because, pursuant to the "last antecedent rule,"[4] the phrase "a substantial distance" only refers to the words "made her move." Therefore, appellant argues, the instruction could be interpreted as requiring (1) that defendant moved the victim or (2) made the victim move a substantial distance. As a result, appellant argues, if the jury found appellant moved Kimberly, they could have found the kidnapping circumstances true without finding she was moved a substantial distance as required. Appellant argues if we find he has forfeited the issue because his trial counsel failed to object to the instruction, his counsel was ineffective. We decline to decide based on forfeiture or ineffective assistance of counsel because, in any event, appellant's claim fails on its merits.

" ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Smithey* (1999) 20 Cal.4th 936, 987.) Accordingly, "[i]n assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled." (*People v. Tate* (2010) 49 Cal.4th 635, 696; see *Estelle v. McGuire* (1991) 502 U.S. 62, 72.) " 'When reviewing a supposedly ambiguous [i.e., potentially misleading] jury instruction, " 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " ' " (*People v. Ayala* (2000) 24 Cal.4th 243, 289.) "We look to the instructions as a whole and the entire record of the trial, including the arguments of counsel." (*People v. Lopez* (2011)

---

[4] The "last antecedent rule" of statutory construction provides that " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' " (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.)

10.

198 Cal.App.4th 698, 708.) "Instructions should be interpreted, if possible, to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*Ibid.*) We also presume the jury followed the court's instructions. (*People v. Edwards* (2013) 57 Cal.4th 658, 746.)

Here, there is not a reasonable likelihood the jury would have understood the instructions in the way that appellant proposes. Any ambiguity arising from the way the instruction was written would have been alleviated by arguments of counsel, which made clear the jury was required to find the victim was moved a substantial distance or made to be moved a substantial distance.

The prosecutor highlighted the definition of "substantial distance" in his closing argument. He went on to argue that "[substantial distance] is what was testified to." He noted appellant dragged Kimberly approximately 15 to 30 feet from the sidewalk into some bushes. He went on to expressly state "the People proffer [the distance moved] was a substantial distance." He never argued the People were not required to prove Kimberly was moved a substantial distance because she was moved rather than made to move.

The prosecutor's argument on "substantial distance" is significant in light of the evidence as presented at trial. The only evidence of movement was that appellant dragged (or "moved") Kimberly. Appellant states in his reply brief that he did not concede movement by dragging. However, appellant's defense was that the sexual encounter was consensual and no dragging occurred; if the jury had accepted appellant's defense, the jury would have acquitted appellant and not reached the question of whether the kidnapping circumstance was true.

Moreover, defense counsel argued the element required a "substantial distance, not 15 to 30 feet, a substantial distance." Defense counsel went on: "And that's what we're talking about here, matter of some feet." "It's a very slight movement."

We are not persuaded by appellant's argument that counsel's arguments would not have alleviated any potential confusion. Appellant contends the jury would have only

understood the argument to mean that movement of a substantial distance was a circumstance that helped establish the increased-risk-of-harm element, pointing to the portion of the instruction that read "[i]n deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement." (CALCRIM No. 3175.) We do not find this was a reasonable way for the jury to interpret counsel's comments. In context of the evidence and arguments, it is clear whether Kimberly was moved a substantial distance was a significant issue at trial, and the most likely interpretation by the jury, last antecedent rule notwithstanding, was that they were required to find the movement was a "substantial distance."

Based on arguments by counsel as well as the way evidence was presented at trial, there is not a reasonable likelihood the jury understood the jury instructions in the manner appellant proposes. We find no error.

### III.    Consecutive Sentencing

Appellant argues the court erred by sentencing him to consecutive terms pursuant to section 667.6, subdivision (d) because the crimes did not occur on "separate occasions" as required by the statute.[5] We disagree.

Section 667.6, subdivision (d) reads in pertinent part: "A full, separate, and consecutive term shall be imposed for each violation of [specified sex offenses] if the crimes involve … the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this

---

[5]    Appellant points out the prosecutor advanced an argument at sentencing based on a recitation of the facts not supported by the evidence wherein appellant forced Kimberly to orally copulate him in the grass area, dragged her, and then raped her in the bushes. We agree the prosecutor's argument was not supported by the record; however, it is clear the trial court did not base its conclusion on these facts, but on facts that were supported by the record. Thus, this opinion does not place any relevance on the prosecutor's recitation of the facts.

subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

"Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

In sentencing appellant to consecutive sentences of 25 years to life, the trial court recited the facts of the case in relevant part as follows: "At [the time appellant forced Kimberly to orally copulate him], Kimberly G. still had her clothing and [appellant] decided to rape her, so he yanked or ripped off her clothing, that is her shorts and her panties. He then decided to climb on top of Kimberly and raped her." The trial court concluded that appellant had "an ample and reasonable opportunity to reflect on his actions between [forcing Kimberly to orally copulate him] and then forcibly raping her after ripping off her shorts and underwear and then climbing on top of her. In other words, despite this ample and reasonable opportunity, [appellant] nevertheless decided to rip off Kimberly's clothing and rape her. So, in the Court's estimation, he had ample and reasonable opportunity to reflect on his conduct between the assaultive sex crimes, but he nevertheless resumed sexual assaulting [Kimberly]. The Court makes the findings, therefore, that while this included only one victim, which is [Kimberly], much [of] these offenses occurred on separate occasions."

Appellant argues that appellant's removal of Kimberly's clothing and climbing on top of her did not constitute a reasonable opportunity to reflect within the meaning of the

13.

statute because these acts were "sexually assaultive behavior," citing *People v. Corona* (1988) 206 Cal.App.3d 13, 18. In *Corona*, the appellate court held where the defendant kissed the victim, removed her pants, continued kissing her, put his finger into her vagina, kissed her genitals, and put his penis in her vagina (*id.* at p. 15), these acts did not constitute "separate occasions" because "there was no cessation of sexually assaultive behavior hence defendant did not 'resume[] sexually assaultive behavior' " (*id.* at p. 18).

Appellant also cites *People v. Peña* (1992) 7 Cal.App.4th 1294, 1316 to support his argument that the switch from forcible oral copulation to rape was merely a "change in position necessary to accomplish rape," and therefore still sexually assaultive behavior insufficient to give rise to a reasonable opportunity to reflect. In *Peña*, the defendant entered the victim's home, raped her, got off of her, twisted her by the legs violently, and orally copulated her. (*Id.* at p. 1299.) The appellate court held the evidence showed a change in position alone is insufficient to provide a perpetrator with a reasonable opportunity to reflect upon his actions. (*Id.* at p. 1316.)

This court has disagreed with both *Corona* and *Peña* to the extent those cases suggest "a finding of 'separate occasions' requires a change of location or an obvious break in a perpetrator's behavior." (*People v. Irvin* (1996) 43 Cal.App.4th 1063, 1070–1071.) In so holding, this court stated: "A violent sexual assault cannot and should not be considered in the same light as sexual acts shared between willing participants. Consensual sex may include times when the participants go back and forth between varied sex acts, which they consider to be one sexual encounter. By contrast, a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter." (*Id.* at p. 1071.) This court in *Irvin* remanded the matter because it was not clear if the court considered whether the defendant had a reasonable opportunity to reflect upon his or her actions during the course of a long sexual assault with directions it do so "even though the parties never changed physical locations and the parties 'merely' changed positions." (*Ibid.*) We

14.

agree with our colleagues in *Irvin* that the trial court is not precluded from finding a reasonable opportunity to reflect despite no change in physical location or "mere" change of sexual position.

In any event, we find *Peña* distinguishable because in addition to "changing positions" the court noted appellant's decision to remove Kimberly's clothes. We reject appellant's argument that the removal of Kimberly's clothes did not constitute an opportunity for him to reflect. To support his assertion that removing Kimberly's clothing was sexually assaultive behavior, denying appellant an opportunity to reflect on his actions, he says it was "essentially part of the rape," citing *People v. Perez* (1979) 23 Cal.3d 545, 553 (*Perez*). The portion of *Perez* quoted by appellant was the court's summary of another case, *People v. Greer* (1947) 30 Cal.2d 589. In *Greer*, the court held the defendant could not be convicted of both lewd and lascivious conduct and statutory rape under the law at the time because "there [was] no question" the same act of rape served as the basis for both charges. (*Greer*, at p. 604.) The court added: "Except for the rape itself, the only act of which [the victim] accused defendant was the forcible removal of her underclothing immediately preceding the rape. To hold that the removal of the [victim's] underclothing constitutes an act separate from the rape, however, would be artificial in the present context and would permit double punishment not authorized or contemplated by [the lewd and lascivious conduct statute.]" (*Ibid*.)

In discussing *Greer*, among other cases, the court in *Perez* reversed and remanded for resentencing where the trial court had concluded that section 654[6] prohibited multiple punishment for a defendant's multiple sexual offenses against a victim over the course of 45 minutes to an hour, including orally copulating her, committing sodomy on her,

---

[6]    Section 654, subdivision (a) reads in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

15.

forcing her to orally copulate him, having vaginal intercourse with her, forcing her to orally copulate him again, and having vaginal intercourse with her again. (*Perez, supra*, 23 Cal.3d at pp. 549, 553–554.) The *Perez* court harmonized its holding with *Greer* and similar cases by pointing out that "[n]one of the sex offenses were committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other." (*Perez*, at pp. 553–554.) The court also noted that "[a] defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (*Id.* at p. 553.)

Appellant's argument that the removal of Kimberly's clothing did not give him an opportunity to reflect based on *Perez* and *Greer* is a request for us to make an inappropriate extrapolation from those cases' holdings. The *Greer* court's refusal to separately punish a defendant for removal of a victim's clothing and the rape that immediately follows does not compel a conclusion that the act of removing Kimberly's clothing in the present case could not allow an opportunity for appellant to reflect.

We note the court mentioned in its ruling that the first responding officer testified "Kimberly reported that she initially refused to orally copulate [appellant] and he punched her again and then shoved his penis in her mouth about 10 times while forcefully grabbing her head." The record shows this officer testified that Kimberly reported appellant punched her after she would not participate in performing oral sex, causing her to fall to the ground on her back at which point appellant removed her clothing and climbed on top of her and raped her. Another officer who interviewed Kimberly testified to a similar order of events. This act of punching testified to by a witness to whom the trial court clearly gave credence gave rise to additional opportunity for appellant to reflect upon his actions.

The court's conclusion that appellant had a reasonable opportunity to reflect and resume sexually assaultive behavior was not unreasonable; accordingly, the court did not err.

## IV. Unauthorized No-Visitation Order

At sentencing, the trial court ordered appellant shall not have visitation with the victim pursuant to section 1202.05. The sentencing minute order and abstract of judgment reflect this order. Appellant contends this order was unauthorized because section 1202.05 prohibits visitation with child victims, and Kimberly was an adult at the time of the crime. Respondent concedes the error and agrees the sentencing minute order and abstract of judgment should be amended to strike the no-visitation order pursuant to section 1202.05.

We agree with the parties. Section 1202.05, subdivision (a) reads in pertinent part: "Whenever a person is sentenced to the state prison … for violating [enumerated sex offenses], and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim." Kimberly was 20 years old at the time of the crimes according to the probation report.

The imposition of the no-visitation order was unauthorized and as such shall be stricken and both the sentencing minute order and the abstract of judgment must be amended to reflect it. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 997.)

## V. Sentencing Minute Order and Abstract of Judgment Clerical Errors

Appellant contends two clerical errors exist on the sentencing minute order and the abstract of judgment. Respondent acknowledges both errors and concedes they must be corrected, and we agree.

" ' "Courts may correct clerical errors at any time, and appellate courts … that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." ' "

17.

(*People v. Hudson* (2018) 28 Cal.App.5th 196, 211.)  Accordingly, we direct the trial court to correct the cited clerical errors.  (See *ibid*.)

## A.   *Reference to the August 10, 2016 Pretrial Criminal Protective Order in the Sentencing Minute Order*

A pretrial criminal protective order (§ 136.2) was entered on August 10, 2016, with no expiration date.  The sentencing minute order states:  "Criminal Protective Order Remains.  Date of Protective Order:  8/10/2016."  Appellant contends that because the protective order expired by operation of law at the time of sentencing and the court did not impose a new protective order at sentencing, the sentencing minute order is in error and the reference to the protective order should be stricken and the minute order amended to state the order is terminated.

A criminal protective order issued pursuant to section 136.2 is operative only during the pendency of the criminal proceedings and as prejudgment orders.  (*People v. Selga* (2008) 162 Cal.App.4th 113, 118–119.)

As the protective order issued on August 10, 2016 expired, and the court did not issue any new protective orders at sentencing, the reference to the protective order in the sentencing minute order must be stricken.

## B.   *Sentence Error in the Abstract of Judgment*

As to count 1, the trial court imposed a prison term of 25 years to life.  As to count 2, the court imposed a consecutive term of 25 years to life.  The total prison term imposed was 50 years to life.

The abstract of judgment indicates in item No. 5 that appellant was sentenced to a term of life with the possibility of parole on counts 1 and 2.  It indicates in item No. 6c that appellant was sentenced to a term of 50 years to life on counts 1 and 2.  Appellant contends the box in item No. 5 should have been left blank because appellant did not receive a "straight life" term and the box in item No. 6b should have been checked

18.

indicating a sentence of 25 years to life on counts 1 and 2.  Appellant contends the sentence, stated in that manner, indicates four consecutive life terms.

We agree the abstract of judgment does not reflect the oral pronouncement of judgment and must be amended.

## DISPOSITION

We remand with directions that the sentencing minute order entered August 3, 2018, be amended as follows:  (1) the sentence "*Visitation of child victim prohibited pursuant to PC1202.05*" on page 3 shall be stricken; and (2) the sentence "Criminal Protective Order Remains.  Date of Protective Order:  8/10/16" on page 3 shall be stricken.

We also direct the abstract of judgment to be amended as follows:  (1) uncheck the box in item No. 5 on page 1; (2) uncheck the box in item No. 6c on page 1; (3) check the box in item No. 6b on page 1 and indicate the noted term applies to counts 1 and 2; and (4) in item No. 12 on page 2, under the heading "Other Orders," strike the first sentence: "IN COMPLIANCE WITH PC 1202.05, DEFENDANT TO HAVE NO VISITATION WITH VICTIM."

In all other respects, the judgment is affirmed.


                                                             DE SANTOS, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


PEÑA, J.

19.